## MAULL v. HAYS.

1. Although a slave has been lent, and continued in possession of the bor-
rower for more than three years, without the registration required by the
statute of frauds, if the owner resumes the possession, before any creditor
of the borrower has acquired a *lien* upon it, it cannot be afterwards made
subject to the debts of the borrower.

Error to the Circuit Court of Lowndes.

Trial of the right of property. · The defendant in error,
having obtained a judgment against Jacob G. Maull, on the
5th October, 1840, sued out an execution thereon, on the
2d June, 1846, which was levied on a negro girl named Betty,
in the possession of the defendant in execution, which was
claimed as the property of John T. Maull.·

The facts, as shown by the bill of exceptions, are, that
the slave went into the possession of the defendant, in Feb-
ruary, 1840, by a loan from one Holmes, to his daughter, the
wife of Maull, who was living with her husband, and con-
tinued to live with him, until her death, in 1844; which
loan it was proved was made in good faith.    That in the fall
of 1844, Holmes took the slave into his possession, and kept
her until the 25th November, 1845, when he conveyed her
by deed to J. F. Maull, the son of the defendant in execution,
and an infant under the age of twenty-one years.    That after
the execution and delivery of the deed, the negro, and the
claimant returned together to the house of the defendant.
That the judgment upon which the execution issued, was
founded on a debt contracted before the negro went into the
possession of the defendant.    And that no execution issued

on the judgment, after the spring term 1840 of the court in which it was rendered, until that which was levied on the slave.

Upon these facts, the court charged in substance, that the slave was liable to the plaintiff's execution. To which the claimant excepted, and which he now assigns as error.

COOK, for plaintiff in error.

The defendant's *fi. fa.* obtained no lien upon the slave while in Maull's possession under the loan to Mrs. Maull. Between the parties no title whatever passed to J. G. Maull, but admitting that a title did accrue to creditors, there being no fraud, there was a good and valuable consideration, in returning the slave and relinquishing title to the loanor. A sale by a defendant in execution when the lien does not exist is good. (In this case the right by three years had not attached when the *fi. fa.* was in the sheriff's hands.) A *fi. fa.* only binds the goods in the county, &c. [Pond v. Griffin, 1 Ala. R: 678.] The property of the debtor is not even divested by the lien. [Bondurant v. Buford, 1 Ala. R. 358; 2 Stew. & P. 390.] When the lien is not kept up, by regular renewals of *fi. fa.*, and third persons acquire rights, they may take advantage of the loss of the lien. It is fraudulent to delay executions. [5 Wh. Com. Law, 410, notes 1, 2.]

The second possession of Maull was not in his own right, and was short of three years. To this loan J. G. Maull was no party. The possession of the father is consistent with the title of his infant son. [Sewall, *pro ami*, v. Glidden, 1 Ala. R. 52; Sims v. Sims, 2 Ala. Rep. 117.]

There was no loan to Maull, express or implied, as in the case of Myers v. Peck, 2 Ala. Rep. 648.

ORMOND, J.—The loan to Mrs. Maull, was in legal estimation a loan to the husband, and the slave having come to his possession it will be in effect the same as if the loan had been made directly to him.

The question then is, whether, as the slave remained in the possession of the husband more than three years, without demand, or pursuit by due course of law, on the part of the lender, she is liable for the payment of his debts, after she

has been returned to the owner, no *lien* having been acquired by the creditor, whilst the slave was in the possession of the debtor. This depends on the proper construction of the statute of frauds. That portion of the 2d section applicable to the case, is to the following effect: "And in like manner, where any loan of goods, and chattels, shall be pretended to have been made, to any person, with whom, or those claiming under him, possession shall have remained by the space of three years, without demand made and pursued, by due course of law, on the part of the pretended lender, the same shall be taken, as to the creditors, and purchasers, of the persons aforesaid, so remaining in possession, to be fraudulent within this act, and that the absolute property, is with the possession; unless such loan, reservation, or limitation of use, or property were declared by will, or by deed in writing, proved and recorded as aforesaid." [Clay's Dig. 254, § 2.]

The statute does not confer the title on the borrower, after the lapse of three years, without demand made, &c., but subjects the property in his hands to the payment of his debts. It is then his possession, after the lapse of three years, on which the right of the creditor attaches, and if that is parted with, before the creditor acquires a *lien* on the property, he can no more follow it into the hands of the owner, than he could pursue property which the debtor had sold previous to his acquiring a right to levy an execution. This result must follow, because the resumption of possession by the owner, divests the right of the loanee, and invests him with the possession.

It is a necessary corrollary from these propositions, that the suing out execution against one, who has loaned property in possession, before the three years have elapsed, creates no lien upon it, because it is not subject to levy and sale for his debts. The first execution therefore, gave the creditor no lien on the slave, and the second could confer no right, because, before it issued, the owner had regained the possession, and the right to sell the slave, as the property of the defendant, being dependent on the possession, was lost when that was parted with. These principles are in effect decided in Boyd & Swepson v. Steinbach, 5 Munf. 305; see also, Myers v. Peck, 2 Ala. 648, and the cases cited.

Whether the creditor would have a right to pursue the property, where the debt had been created during the continuance of the loan, and the possession resumed by the owner after the expiration of three years, from the time the loan was made, is a question we need not consider, as the debt in this case existed anterior to the loan.

The subsequent possession of the defendant, did not subject the property to sale for his debts, unless the conveyance by Holmes, to the son of the defendant, was merely colorable, not intended to vest the property in the son, but by the means of a pretended conveyance to the son, to give the defendant the right to use, and control the property. If the gift to the son was *bona fide*, he being an infant, residing with his father, the possession will be referred to the title of the son. [Sewall v. Gliddon, 2 Ala. 52.]

Let the judgment be reversed, and the cause remanded.