## BEALL v. LEDLOW.

1. The declaration of a party in possession of personal property, that it is not his, but belongs to his father, is competent testimony for the father, against a creditor of the son.

2. It is no objection to the competency of declarations made by a party to the suit, that they were made after the suit was commenced.

3. An execution being levied on a slave as the property of L. L., was claimed by A. L., who proved a loan of the slave to L. L.,—Held, that the proof by A. L., that a house and lot on which L. L. resided, had been conveyed to him, A. L., was wholly irrelevant.

4. A statement in writing, not under seal, or proved, or recorded, setting out the loan of a slave by A. L. to L. L., is not competent testimony in a controversy between A. L. and a creditor of L. L., without proof that the slave was delivered to L. L., simultaneously with the execution of the instrument.

Writ of Error to the Circuit Court of Tuscaloosa. Before the Hon. T. A. Walker.

John W. Beall, having judgment against Lewis Ledlow, sued out a *fieri facias* thereon, which was levied on a slave by the name of Joe, and thereupon Adam Ledlow interposed a claim to the property.

On the trial of the right of property, as appears from a bill of exceptions, it appeared that Elizabeth Ledlow, by her next friend Lewis Ledlow, had sued the plaintiff in error for slander, in which she was defeated, and a judgment rendered a-

gainst her next friend for costs, on the 27th March, 1846. The judgment was for $463 78, and the execution was levied on the 15th April, 1846.

The plaintiff also proved, by several witnesses, that the slave had been in the possession of the claimant since 1840, that he hired him out, and exercised other acts of ownership over him. That Rebecca Ledlow, the wife of Lewis Ledlow, sometimes claimed the hire, on account of the intemperance of Lewis. That Lewis Ledlow sometimes hired the slave, and received the hire. It was proved that the claimant had said, that he had suffered things to go on too loosely in regard to Joe, that he believed the case would go against his son, and that he must get him back again, to keep him from being liable for his son Lewis's debts.

The claimant proved, that frequently during his possession of the slave, Lewis had declared that the slave did not belong to him, but to his father, Adam Ledlow. The plaintiff objected to this testimony, but his objection was overruled. The claimant also proved, that the plaintiff, after the interposition of the claim, had said, that he knew the property belonged to Adam, but that he would make it liable. This was also excepted to by the plaintiff.

The claimant then offered in evidence, a deed for a house and lot, proved to be occupied by Lewis Ledlow, made to the said claimant, by one Sheppard, for the purpose of showing that Lewis was in possession of Adam's property, and slave. To this also the plaintiff excepted.

The claimant also proved the execution, on the day of its date, of the following instrument: "This is to certify, that I, Adam Ledlow, have put my son Lewis, in peaceable and quiet possession of the houses and lots, in the town of North Tuscaloosa, that I purchased from Ivey Sheppard. I have also sent a negro boy with him to help him to put the lot in good repair. These houses and lots are to be at my command at any time I call for them, and the negro boy Joe also. This 6th October, 1840.                          his

ADAM ⋈ LEDLOW.

Attest: JONATHAN POUNDS.                          mark.

This was objected to, because not under seal, and proved,

and recorded, as required by the statute of frauds; but the objection was overruled. and the plaintiff excepted.

The court charged the jury, that if the slave belonged to Adam Ledlow, in 1840, and had remained in Lewis's possession for three years, yet if it was taken into Adam Ledlow's possession before the judgment rendered in the action of slander in favor of the plaintiff in execution, the slave was not liable to satisfy the execution.

2. That the plaintiff in execution was not a creditor within the meaning of that term in the 2d section of the statute of frauds, upon a question of pretended loan, until he obtained judgment in the action of slander. To these charges the plaintiff excepted, and moved the court to charge, that if the slave had remained in the possession of Lewis for three years, without demand made and pursued by due course of law, or without deed recorded, and that Adam Ledlow had taken the slave from the possession of his son, with the view of defeating the execution which Beall was expected to have against him, the slave was liable to satisfy the execution; which the court gave, but added, it was necessary for Beall to prove, that Adam did not regain the possession, until after the rendition of the judgment in the action of slander.

3. That if the jury believe the evidence, they must find for the plaintiff, which the court refused to give, and he excepted.

The matters of law arising out of the bill of exceptions, are now assigned as error.

B. F. PORTER, for the plaintiff in error.

1. The loan was a nullity so far as concerned the creditors of the loanee, though the lendor obtained possession after the lapse of three years. Myers v. Peek's adm'rs, 2 Ala. R. 648; Boyd et al. v. Stainback et al. 5 Munf. 305; Meaux v. Caldwell, 2 Bibb, 244; Withers v. Smith, 4 Bibb, 170; Gay v. Mosely, 2 Munf. 443.

2. The decisions as to the registry acts, the law relating to fraudulent acts, or loans, are built upon different grounds. In the first, notice will defeat a lien; in the last, notice is ineffective, if the three years have elapsed. Smith & Co. v. Zur-

cher, 9 Ala. Rep. 208; Myers v. Peek's adm'rs, 2 Ib. 648, 659.

3. The evidence admitted by the court was not legal. The deed, or writing, had not been recorded, and the declarations of the lender to the extent proved, were not admissible. Clay's Dig. 254, § 2.

4. Under the evidence, the loanee having possession for more than three years, without demand made and pursued by the lender, and no reservation, loan or limitation, having been declared by deed proved and recorded, plaintiff in execution was entitled to recover. Under the act, these make out, as to creditors and purchasers, a conclusive, not disputable ownership in the loanee. Myers v. Peek's adm'r, *supra;* Boyd, &c. v. Steinbach, &c. 5 Munf. 305. See also on first point, Oden v. Stubblefield, 4 Ala. R. 40.

E. W. PECK, contra.

1. As to the declarations of Lewis Ledlow, they were properly admitted on the authority of Webster v. Smith, 10 Ala. 429.

2. Although the slave had been in the possession of the defendant in the execution by loan, yet as the lender had resumed the possession before the plaintiff in error had acquired a lien, the slave could not afterwards be taken to pay the borrower's debt. Maull v. Hays, 12 Ala. 499.

COLLIER, C. J.—The declaration of the defendant in execution, previous to the recovery of judgment by the plaintiff, and while he was in possession of the slave in question, that he was the property of claimant was clearly admissible. See McBride v. Thompson, 8 Ala. Rep. 650; Webster v. Smith, 10 Ala. 429. We cannot conceive of any well founded objection to the declarations of the plaintiff, though made after the interposition of the claim of property; as they are evidence against himself only, it is perfectly immaterial when they were made, and certainly are not less potent because they were of recent date.

How the deed for the house and lot from Sheppard to the claimant, could in any degree tend to establish the title of the latter to the slave, we are unable to discover. To this

point we have given much and anxious consideration, and are constrained to think, that the title to the lot and slave are not necessarily, or even presumptively in the same individual. The proof of the claimant's title to the lot, had not the remotest connection, so far as the record informs us, with the matter in issue, viz : whether the slave was subject to the plaintiff's execution. It cannot be intended that the evidence was relevant, even conceding that a bill of exceptions, where it is inexplicit, shall be construed most strongly against the party excepting. See 2 Phil. Ev. C. & H's Notes, 436, *et seq.*

The writing which was drawn by the witness, Pounds, at the request of claimant and his wife, in October, 1840, would be competent as the declaration of the claimant of the circumstances under which he delivered the slave to the defendant in execution, if at the time he subscribed the paper, the slave was in his possession. By other testimony it would be competent to show the fact of possession by the claimant ; but neither the deposition nor the writing itself, nor any testimony in the cause, prove that the slave was delivered to the defendant in execution simultaneously with the making of it. Nor does it appear whether the claimant had possession of him in October, 1840, or until he was delivered to the claimant, or his agent, by the defendant. In this predicament of the case, the citations we have made from our own decisions, show that the declaration should have been rejected, because there was no *res gestae* on which its admission could be rested.

The first charge given, will not perhaps bear the test of legal criticism. It narrowed the inquiries of the jury too much, and relieved them from the necessity of considering the claimant's title since 1840, if he obtained possession of the slave before the judgment for costs was rendered against the defendant in execution. In respect to the second charge, it conforms to the law as laid down in Maul v. Hays, 12 Ala. Rep. 499. In that case, this court decided, that although a slave had been lent, and continued in the possession of the borrower for more than three years, without the registration required by the statute of frauds, if the owner resumes the possession before any creditor of the borrower has acquired a

*lien* upon it, it cannot afterwards be made subject to the debts of the borrower. This decision is so explicit upon the points on which, judging from the record before us, the case at bar must turn on a future trial, we decline the consideration of the questions arising on the plaintiff's prayers for instructions.

We have but to add, that the judgment is reversed, and the cause remanded.