## THOMAS vs. De GRAFFENREID.

27  651
143  528

[QUESTIONS OF EVIDENCE ARISING ON TRIAL OF RIGHT OF PROPERTY IN CERTAIN SLAVES BETWEEN PLAINTIFF IN EXECUTION AND DAUGHTER OF DEFENDANT IN EXECUTION.]

1. *Answer not responsive to interrogatory, and stating opinion or legal conclusion, properly suppressed.*—A witness, testifying to a parol gift of a slave, was asked, on cross-examination, whether control and possession passed to the grantee at the time of the gift, or whether the grantor still retained possession; and answered, "I considered that the control and possession of the slave did pass to the grantee at the time, and the slave was known as his property from that time": *Held*, that the answer was properly suppressed, because it was not responsive to the interrogatory, and because it stated mere opinion and legal conclusion instead of facts.

2. *Retroactive effect of statute.*—Evidence tending to show a parol gift of a slave, cannot be rebutted by proof of a statute subsequently enacted, under which the gift would be invalid: since the statute cannot retroact on the gift, nor affect it in any way, it is irrelevant evidence.

3. *Injury presumed from error.*—Injury will be presumed from the erroneous admission of irrelevant evidence, unless the contrary clearly appears; since,

if such evidence can do no other harm, it may obscure the real points in issue.

4. *Relevancy of evidence as tending to show ownership.*—Where the slaves in controversy lived and worked on the plantation owned by the defendant in execution, together with himself and his children, and constituted a part of his family, the fact that he furnished the family with necessaries, is evidence (though weak) tending to prove his ownership of the slaves.

5. *Relevancy of evidence as tending to disprove ownership.*—But the fact that the defendant in execution did not obtain credit on the faith of the slaves in his possession, is not competent evidence to disprove his ownership.

6. *General objection to evidence, of which part is legal.*—Where ·two depositions are offered in evidence, and are objected to "on the ground that no interrogatories, cross-interrogatories, or commissions issued to take the testimony of said witnesses or either of them", the entire objection may be overruled if either deposition is unobjectionable.

7. *Declarations explanatory of possession.*—The answer of a third person, to a proposition to purchase one of the slaves in controversy, is not competent evidence, unless it is shown that the slave was in his possession, and the reply tended to explain that fact.

8. *Declarations in disparagement of title.*—Declarations made by the defendant in execution, while in possession of the slave in controversy, to the effect that said slave did not belong to him, but to the claimant, who was his daughter, although they may be entitled to but little (if any) weight, are admissible evidence for the claimant.

9. *Value of property at time of trial.*—The plaintiff in execution may prove the value of the property at the time of the trial.

APPEAL from the Circuit Court of Benton.

Tried before the Hon. ANDREW B. MOORE.

TRIAL OF THE RIGHT OF PROPERTY in a slave named Jenny, and her two children, who had been levied on under execution in favor of the appellee against Athanasius Thomas and William Thomas, and a claim interposed by Mary Thomas, who was a daughter of said Athanasius. The claimant derived title to the slaves through a parol gift of Jenny's mother, before the birth of Jenny, from said Athanasius Thomas to his son James, and a subsequent purchase by claimant from said James. For the previous report of the case, which was before this court at its January term, 1851, see 17 Ala. 602. The questions now presented by the assignments of error, arise out of the rulings of the court below on the evidence, and can only be fairly stated in the language of the bill of exceptions.

The plaintiff proved the levy on the slaves, in October, 1846, and their value at that time, and then offered to prove

their value at the time of the trial. To this the claimant objected, but the court overruled her objection, and allowed the proof to be made; and to this the claimant excepted.

After proving that the slaves were in the possession of the defendant in execution at the time of the levy, the plaintiff rested his case; and the claimant then introduced evidence tending to show a purchase by herself of the slave Jenny, in 1840, from James Thomas, and that Jenny had been in his possession some five or six years before her said purchase. " The claimant introduced proof, also, tending to show, that at the time of her said purchase, and for a number of years previous to that time, her father (Athanasius Thomas), herself, and her brothers, of whom James Thomas was one, lived together in South Carolina, upon the same farm, and in the same house ; but they worked different parts of the farm, each to himself, and the proceeds of whatever was raised on the farm for sale was taken each part to the individual who had produced it ; and that the corn, &c., which was raised upon the farm, was consumed in common by the family. Claimant proved, also, that her father, herself, and several of her brothers, all being unmarried, removed together to Alabama in 1843 ; that her father married in 1844, and moved off to himself in 1845, while the negroes remained with and worked for her, both before and after his marriage ; and then read the deposition of Mrs. Eleanor Todd", who testified to a parol gift of a slave named Lucy, who was the mother of Jenny, from Athanasius Thomas to his son James, in the year 1812. The deposition of this witness was taken by the claimant ; and cross-interrogatories were filed by the plaintiff, of which the sixth and ninth, with the answers thereto, were as follows :

*Sixth Cross-Interrogatory.*—" Did the control of Lucy pass from Athanasius Thomas to James or William at the time of the gift mentioned by you ? Did the possession of Lucy pass, at the time of the gift, to either James or William Thomas" ? *Answer.*—" I considered that the control of Lucy did pass, at the time of the gift, from Athanasius to James Thomas. I also considered the possession to pass to James Thomas at the time of the gift."

*Ninth Cross-Interrogatory.*—" Did not Athanasius Thomas, after the gift, continue in the possession of Lucy, just as he

had done before, so long as you lived near or visited the family"? *Answer.*—"Athanasius Thomas, after the gift, had charge of the plantation, until William and James took charge of it; but the negro Lucy was known as the property of James Thomas, from the time of the gift, until I left South Carolina."

The court sustained a motion to suppress each of these answers, and excluded them from the jury; and to this the claimant excepted.

"The claimant introduced other evidence, corroborative of the above, and then closed her case"; and the plaintiff then offered in evidence a certified copy of a statute of South Carolina, passed in 1832, which enacted "that no parol gift of any chattel shall be valid, against subsequent creditors, or purchasers, or mortgagees, except when the donee shall live separate and apart from the donor, and actual possession shall, at the time of the gift, be delivered to, and remain and continue in, the donee, his or her executors, administrators, or assigns." The claimant objected to the reading of this statute in evidence, on the ground that it was irrelevant; but the court overruled the objection, and claimant excepted.

The plaintiff then offered the deposition of Coleman Crosby, which was taken on interrogatories and cross-interrogatories; and the claimant having declined to read the answers to the cross-interrogatories, the plaintiff offered them in evidence. This witness, who was a near neighbor of Athanasius Thomas before the latter left South Carolina, and who testifies to divers acts of ownership over the slaves by said Thomas, in part of his answer to the second interrogatory, says, "*I never knew any one to purchase necessaries for the family, except Alha. Thomas*"; in part of his answer to the third interrogatory,—"*I know of no means of purchasing that either James or Mary had.* James was not industrious in his habits, and worked but little on the farm,—not more than pay his board; and Mary had no employment, except attending to her father's household affairs. I never knew of any funds that she had acquired, and do not know how she could have acquired any to purchase negroes"; and in part of his answer to the second cross-interrogatory,—"*James Thomas never, to my knowledge, had possession, or in any manner claimed, the ne-*

*groes Jenny and her children and Lucy.*" The claimant made a separate objection to that portion of each of these answers which is italicized, on the ground that it was irrelevant, illegal, and incompetent ; but the court overruled each objection, and the claimant excepted to its rulings.

"The plaintiff then offered to read in evidence the depositions of Darling Allen and Allbon Boulware. Claimant objected, on the ground that no interrogatories, cross-interrogatories, or commissions issued to take the testimony of said witnesses, or either of them. Plaintiff then proved, that interrogatories and cross-interrogatories had been propounded to Darling Allen and Osborn Bolar, and commissions issued to take their testimony, and that these depositions were read in evidence upon a former trial"; and then read to the court an agreement of counsel, in effect, that they waived all objections to any informality or irregularity in the depositions taken in the cause, and reserved only all objections to the relevancy and legality of the evidence." Thereupon, the court overruled the objection, the depositions were read, and the claimant excepted.

The witness Allen, in answer to the second interrogatory, after stating that he lived for several years on a plantation adjoining that occupied by Athanasius Thomas before he left South Carolina, and that he saw said Thomas, almost daily, managing, controlling, and giving directions to the negroes in his possession, says,—" *The land he lived on, he professed to own in his own right.* I know nothing about his paying rent. Mary, James, and William all lived with the old man until they left, except William, who was married about the year before they left, and lived to himself afterwards on a part of the same plantation on which the old man lived. I know that Atha. Thomas provided for the family. I know that he repeatedly purchased necessaries for the family, *and I never knew, or heard, of any one else doing so at any time.*" To the first italicized portion of the answer the claimant objected, "on the ground that it was irrelevant and incompetent, and that there was better evidence of the ownership of the land than his possession"; and to the latter portion, because it was irrelevant. The court overruled both the objections, and the claimant excepted.

This witness says, also, in his answer to the third interrogatory, " Mary Thomas had no employment, except attending to the affairs of her father's house. I never knew, or heard, of any funds that she had acquired, and I know not how she could have acquired any. I never knew, and never heard, of any purchase of Jenny and her children, by Mary from James Thomas ; nor did I ever hear of any swap, or trade, for said negroes ; nor was there ever any transfer of possession or control of said negroes from one to the other." The claimant objected to those portions of this answer, " in which the witness states that he never knew of any means Mary Thomas had of purchasing property, nor did he ever hear of any swap or trade for said negroes", as being irrelevant and illegal ; but the court overruled each of the objections, and the claimant excepted.

" The claimant then introduced one Clough Shelton as a witness, who testified, that he resided in South Carolina, at the time and before said Athanasius Thomas and claimant left there, and near to their residence ; that he went to their residence, about a month before their departure, and while the negro Jenny was there, with the intention of trying to purchase her. Witness was then asked, if he made any proposition to any one to buy said negro, in the presence of said Atha. Thomas ; and, if so, to whom, and what Atha. Thomas said in reply. The plaintiff objected to this question, and the court sustained the objection ; and to this the claimant excepted. Claimant's counsel then stated to the court, that he expected to prove that said Atha. Thomas, while Jenny was in his possession, in the winter of 1842–3, said to this witness, that Jenny did not belong to him, but belonged to Mary ; and requested permission to ask the witness for such proof. The court refused permission, and claimant excepted.

" The claimant introduced another witness, who stated, that he had known Atha. Thomas and his family, intimately, for some thirty years ; that he lived in their immediate neighborhood, for several years preceding 1838, knew them then, and had known them since that time down to 1846; and that he was well acquainted in the neighborhood in which said Atha. Thomas lived in South Carolina. Claimant then proposed to prove by this witness, that Atha. Thomas did not

obtain credit in South Carolina on the faith of the negroes he had in possession.· The plaintiff objected to this evidence, and the court sustained the objection ; and claimant excepted."

All these rulings of the court are now assigned for error.

WHITE & PARSONS, for the appellant.

JAMES B. MARTIN, *contra.*

GOLDTHWAITE, J.—There was no error in sustaining the objection made to the answer of the witness Todd to the sixth cross-interrogatory, for the reason, that it did not answer as to the fact inquired of, but simply gave the opinion of the witness in relation to it. So, also, as to the objection made to the answer of the same witness to the ninth cross-interrogatory. The question relates solely to the possession ; and the reply is, that the property was known to belong to the person through whom the defendant below claimed—thus assuming the real question at issue, and announcing the conclusion of herself and others as to that fact. That portion of the answer was neither a response to the question, nor was it legitimate evidence, for the reason, that it was here a purely legal conclusion. It is true that part of the answer, which stated that the defendant in execution remained in charge of the plantation, may have been proper, under the decision of this court when the case was last here (17 Ala. 602); but, as the part referred to could only have operated in favor of the objecting party, the other side could not complain.

In relation to the statute of South Carolina, of the 20th December, 1832, we are unable to perceive its relevancy. The simple question, under the pleadings, was, whether the slaves levied on were subject to the execution ; and the plaintiff had offered testimony, conducing to show that the defendant in execution was the owner of the property, by evidence of his possession of and control over it. The claimant attempted to establish her right, by proving a gift of the property to her in 1812 ; and the plaintiff, to rebut this evidence, offered a law passed twenty years afterwards, declaring, in effect, all parol gifts invalid against subsequent creditors and purchasers, unless the donee lived separate and apart from the donor, and actual possession at the time of the gift was delivered

42

and continued in the possession of the donee. This law certainly could not have any effect on gifts made before its passage, and there is not any evidence of one made after the period of its enactment. The gift relied on, if made at all, was made long before that time, and could not, if valid, be affected in any way by the act subsequently passed.

The claimant may not have been injured by this testimony; but we are not fully satisfied of this. As juries are constituted, it is very difficult to say what effect this or that evidence is to have upon their minds. If irrelevant testimony can do no other harm, it may raise a cloud, and observe the real points; especially when it goes to them with the sanction of the court as to its materiality. The safe rule, and the one on which we have acted, is, that injury is always to be presumed from error, unless the contrary clearly appears; and where irrelevant evidence has been admitted, the absence of injury must be very plain to allow us to sanction the error. Frierson v. Frierson, 22 Ala. 549.

In relation to that part of the answer of the witness Crosby to the second direct interrogatory, which states that the witness never knew any one to purchase necessaries for the family of Athanasius Thomas, the defendant in execution,—it may be evidence of a very weak character, but it is not irrelevant. The family, as we understand it, included the slaves which were the subject of contest; and the improbability that a person who did not own them should for years supply them with necessaries, is enough to sustain the admissibility of this testimony. The part of the answer of the same witness to the third direct and second cross-interrogatory, which was objected to, was decided, when the case was last here, against the appellant.

The offer to show that the defendant in execution did not obtain credit in South Carolina upon the faith of the slaves he had in possession, was irrelevant, and the objection to it was properly sustained. The issue here was, whether the title was in the claimant, and the evidence offered was incompetent to sustain it.

In relation to the objections which were made to the depositions of the witnesses Allen and Boulware, it is only necessary to observe, that if it were conceded that the deposition

of the last witness would have been inadmissible if objected to separately, yet, as the objection was general, and went to both depositions, it was properly overruled, as there is nothing which would warrant the exclusion of the deposition of Allen. This point has been so often determined by this court, as to render it unnecessary to cite authorities.

Neither was there any error in overruling the question propounded on the part of the appellant to the witness Shelton. The reply made by a third person to a proposition to buy one of the slaves, the ownership of which was in question, would not be evidence, unless it was shown that the person by whom it was made was in possession of the slave at the time, and unless the reply tended to explain that fact. If the possession had been proved, the question as asked was too broad, as it would admit of any answer, whether relating to the possession or not. It should have confined the reply sought for to statements relating to the possession.

As to the facts which the claimant offered to prove by this witness, we can see no objection. They were simply declarations, made by a party in possession, that the property belonged to the claimant, and tended to show that he held in subordination to her,—impliedly, at least, referring his possession to her ownership; and under our decisions, evidence of this character was admissible.—Beall v. Ledlow, 14 Ala. 523; Nelson v. Iverson, 17 Ala. 216. Statements like these, where, from the situation of the party, there is an obvious motive for representing the ownership to be in another, may be entitled to but little (if any) weight; but still they are admissible for what they are worth. Whether the offer to prove the facts referred to was objectionable, on the ground that it proposed to do so by propounding leading questions, it is unnecessary to decide, as it is not probable the same question will arise on another trial.

There was no error in allowing the proof of the value of the slaves at the time of the trial (Borland v. Mayo, 8 Ala. 103); nor in allowing the declarations of Athanasius Thomas, while in the possession of the plantation, that he held it in his own right; nor in the objections which were made to portions of the answers of the witnesses Crosby and Allen, which were discussed and determined when the case was last here.

The judgment must be reversed, and the cause remanded.