## SALTMARSH vs. BOWER & CO.

[ASSUMPSIT ON COMMON MONEY COUNTS.]

1. *Re-examination of party as witness.*—When the deposition of the nominal plaintiff has been taken, at the instance of the defendant, on interrogatories and cross-interrogatories, it may be re-taken by the beneficial plaintiff under the act of 1856, (Session Acts 1855-6, p. 28,) on making the prescribed affidavit; and it is no objection to the second deposition, that the commission does not state that it is to operate by way of re-examination or cross-examination.

2. *Specific objection to deposition.*—A motion to suppress a deposition, on a specified ground, is an implied waiver of all other grounds of objection; and the party will be confined in the appellate court to the specified objection.

3. *General objection to deposition.*—A general objection to a deposition as evidence, not assigning any particular reason, nor specifying any particular point, may be overruled entirely, if any part of the deposition is legal evidence.

4. *When objection to deposition must be made.*—An objection to a portion of a deposition, on the ground that it is not responsive to the interrogatory, cannot be made for the first time on the trial, unless accompanied by proof that it could not have been made at an earlier opportunity.

5. *When witness may testify to opinion or conclusion.*—A witness cannot be allowed to state, in reference to an advance of money, that he " did not *consider* that this was a loan."

6. *Same.*—Where a witness used this language, " It was *understood* between B. and myself, and was agreed on before the failure of B. & Co., to dispose of the claim in this way, and, *as we thought*, to the satisfaction of all parties concerned,"—*held*, that the word *understood*, being evidently used as the synonym of *agreed*, was not objectionable as the expression of an opinion by the witness; and consequently, that an objection to the entire answer might be overruled, although the latter portion of it was not admissible evidence.

7. *Relevancy of evidence affecting question whether contract of partner is binding on partnership.*—It being a material question, whether certain acceptances in the name of a firm were binding on the partnership, or were the act of one partner individually, without the knowledge or consent of his co-partner, and for a consideration outside the scope of the partnership business, evidence showing the nature and character of the general business in which the partnership was engaged is relevant and admissible.

8. *Attorney's authority to make admissions.*—Held, on the authority of *Rosenbaum's case*, 33 Ala. 354, that there was no error in the refusal of the primary court to suppress an admission of record made by the defendant's former attorney, on the affidavit of the defendant himself that he " supposed said admission was inadvertently made."

9. *Waiver of right of set-off by contract and breach thereof.*—Defendant having a judgment against plaintiff and another, (the latter as surety of plaintiff,) and plaintiff having at the same time an unsatisfied account against defendant ; an agreement between them that the account should be credited on the judgment, coupled with the transfer of the account by plaintiff to his surety, in order that it might be so credited for his protection, and the subsequent breach of the agreement by defendant, in coercing satisfaction of the entire judgment out of the surety,—do not prevent defendant, when sued on the account by plaintiff, for the use of his surety, from pleading as a set-off any other demand due to him by plaintiff.

10. *Conclusiveness of judgment.*—Where a petition for the *supersedeas* of an execution is filed by one of the defendants in the judgment, who was the surety of his co-defendant, setting up a contract between his co-defendant and the plaintiff, to the effect that an account held by the former on the latter, equal to the amount due on the judgment, should be credited on the judgment,—the judgment of the court, dismissing the *smpersedeas*, is conclusive on the petitioner, in a subsequent action on the account, as to the making of the alleged contract, but is not *prima facie* conclusive against the correctness of the account.

11. *Effect of recitals of record as evidence.*—When a transcript, showing the proceedings had on a petition for the *supersedeas* of an execution, is offered in evidence in a subsequent suit, the petition for the *supersedeas*, though admissible in evidence as a part of the record, is not competent evidence of the facts stated in it.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by William Bower & Co., late partners, for the use of John N. Smith, against Alanson Saltmarsh, and was commenced on the 7th, October, 1847. The cause of action was the sum of $2,318 23, alleged to be due on an account stated, for goods, wares and merchandise sold and delivered, for money had and received, and money paid, laid out and expended, as stated in the common money counts. The pleas were, *non assumpsit*, set-off, and payment; and the cause was tried on issue joined on all these pleas. The case was before this court at its January term, 1853, and may be found reported in 22d Ala. 221.

The firm of William Bower & Co. was composed of William Bower and George Haig, to both of whom interrogatories were propounded by the defendant, and cross interrogatories on the part of the beneficial plaintiff, in March, 1849. In October, 1856, the deposition of said

Bower was re-taken by the plaintiff, and was read in evidence on the trial, against the defendant's objections. The several objections which were made to this deposition, and to distinct portions thereof, and also to different portions of the deposition of said Haig, will be readily understood from the opinion of the court.

The material facts of the case, which give rise to the legal questions involved in the charge of the court to the jury, are briefly these : On the 22d October, 1845, Saltmarsh recovered a judgment against William Bower and John N. Smith, (the latter as surety of said Bower,) for over $6,000, in the circuit court of Lowndes county. At that time Saltmarsh was indebted to said William Bower & Co., who were his commission-merchants in Mobile, for a balance due on account, for advances made, amounting to $2,318 23; and it seems to have been agreed between him and Bower that this account should be credited on said judgment. The account was afterwards transferred by Bower & Co. to Smith, for his partial protection against the judgment, or in order that he might have it credited on the judgment; and Smith paid on the judgment the balance due, as he claimed. Bower & Co. having become insolvent, and Saltmarsh being bound as their surety on other liabilities, which he afterwards had to pay, he had an execution issued on his judgment against Bower and Smith, and sought to make the balance of his debt out of the latter. Smith then filed his petition for a *supersedeas* of the execution, setting up the agreement above mentioned, relative to the credit of the account on the judgment, and insisting that the balance due on the judgment, after deducting the account, was fully paid. On the final hearing of the *supersedeas* case, "the matters of fact and of law being submitted to the decision of the court without a jury," the court excluded all the evidence offered on both sides, and dismissed the *supersedeas*, at the costs of the petitioner; and Smith was afterwards compelled to pay the balance due on the judgment. This action on the account being brought before the final disposition of the *supersedeas* case, the defendant endeavored to establish as a set-off the debts which he

had been compelled to pay for Bower & Co. after their insolvency; while the plaintiff relied on the agreement and facts above stated, as precluding that defense.

The plaintiff offered in evidence, during the trial, the record of the *supersedeas* case, and the court admitted it against the defendant's objections. The plaintiff also offered in evidence a written admission, signed by the defendant's former counsel in this case, in the following words: "It is admitted in this case, that Col. Geo. W. Gayle will testify that, some time in March, 1851, John N. Smith, as the surety of Wm. Bower & Co., paid the amount of a judgment rendered in the circuit court of Lowndes county, in favor of defendant, against said Smith, in which the execution was superseded by said Smith; the amount paid by said Smith amounting to $3,000, or more." "The defendant moved the court to suppress said admission, as inadvertently made, and offered his own affidavit, sworn to and subscribed, in open court, on the 4th November, 1857," in which he stated, "that he never knew of said admission until this morning; that he supposed said admission was inadvertently made; and that said debt was the debt of William Bower alone, and of his sureties thereto, and was not a debt of Wm. Bower & Co." "The plaintiffs resisted the motion to suppress, and showed, by their attorney, that the said admission had been on file for some time; but the defendant's counsel stated, that they had never seen it until it was offered. On this proof, the court overruled the motion to suppress the admission; and the defendant excepted."

"The court charged the jury, among other things, that if the judgment in Lowndes county was obtained on an indebtedness for which Smith was only surety, and Bower was principal; and if the account sued on was transferred by said Bower to Smith, in consideration of his liability under such judgment, and with the view of having it credited on said judgment; and if such transfer was made pursuant to an understanding or agreement between plaintiff and defendant, that said account, to the extent of it, should be a payment of, or allowed as a credit on the judgment,—then, if it was not allowed as a credit on

the judgment, and Smith was compelled to pay, and did pay the judgment, the defendant would not be entitled to set off against it any demand in his favor against William Bower & Co."

The court also charged the jury, at the request of the plaintiff, as follows: "That if they believed from the evidence that it was agreed between the plaintiff, defendant and Smith, that the account sued on was to be applied in payment of the judgment in Lowndes county against Smith, and that said account was transferred to Smith in pursuance of this agreement, then the defendant would not be entitled to any set-off." To this charge the defendant excepted.

"The jury having returned into court for further instructions, and asked the court whether they could look to the statements of Smith contained in his petition for a *supersedeas*, as set forth in the transcript from Lowndes circuit court, the court thereupon stated to them, 'that the whole transcript was in evidence before them, and they could look to each part of it as evidence of what it purported to be.' The defendant excepted to this charge, and requested the court to instruct the jury, 'that the matters contained in said petition could not be looked to as evidence in this cause;' which charge the court refused to give, and the defendant excepted."

"The defendant further asked the court to instruct the jury, 'that they might look to the judgment of said circuit court of Lowndes county upon said petition, and if the same was against said petition, it was a judicial determination of the matters and things therein stated and contained, and that the same were not true;' which charge the court refused to give, and the defendant excepted."

The rulings of the court on the evidence, the charges given to the jury, and the refusal of the several charges asked, to which exceptions were reserved, are now assigned as error.

BROOKS & VARY, for appellant.

I. W. GARROTT, *contra.*

40

A. J. WALKER, C. J.—The motion to suppress the cross-examination or re-examination of the nominal plaintiff, Bower, was predicated upon the two specified grounds, that there was no law authorizing it, and that this was not a case in which it could be allowed. The act of Feb. 8th, 1856, allows a re-examination, " either with or without interrogatories, by a party who had made a previous cross-examination that was imperfect or insufficient, but not made so by his willful neglect." The prescribed prerequisite of such re-examination is, that the party, his agent, or attorney, shall make a satisfactory showing, upon oath, in writing, filed in open court, or with the clerk or register in vacation, of sufficient excuse for not having perfected the cross-examination before, and that a further cross-examination is necessary to secure justice upon the trial of the cause. The act further directs, that the deposition shall, in all respects, operate as a cross-examination.—Pamphlet Acts of '55, '56, p. 28.

A reference to this statute obviously demonstrates the unsoundness of the first objection, if the re-examination was taken under the statute above named. The witness was the nominal plaintiff, but the defendant made him his witness by taking his deposition ; and the beneficial plaintiff cross-examined imperfectly, from causes of which a satisfactory explanation was made by affidavits filed in pursuance to the statute. When the defendant thus examined the witness by taking his deposition, and the plaintiff had cross-examined, the defendant stood in reference to the deposition, as if the witness had been disinterested, and unconnected with the record, (Stewart v. Hood, 10 Ala. 600; Lyde v. Taylor, 17 Ala. 270;) and the right to re-examine under the statute was the same as it would have been in the case of any other witness.

It is true that the commission does not state, in terms, that the re-examination was to operate or be by way of cross-examination. But this omission could not prejudice the defendant; because, under our decisions, a party cross-examining is not confined to the subject-matter of the direct questions, but may examine generally as to all relevant matters.

The deposition was taken in pursuance to the statute, and conforms to its requisitions in every substantial particular ; and the objection, that there was no law authorizing the re-examination, cannot be sustained.

[2.] No reason to support the second ground of objection occurs to us, and we can perceive no error in overruling it. The appellant is confined to the objection made in the court below, and we therefore pass by, without remark, several other objections taken in argument before this court.—King v. Pope, 28 Ala. 601 ; Agee v. Williams, 30 Ala. 636.

[3.] After the motion to suppress the re-examination was overruled, the defendant objected, in general terms, to its introduction in evidence. A general objection, without defining any particular point, or assigning any reason, should always be overruled, if any part of the evidence is legal. It would be a most absurd practice, to permit a party to throw upon the court the burden of scrutinizing the entire proceedings, from the making of the affidavit to the return of the deposition into court, in quest of a fatal objection ; while the party stood by, forbearing to direct the attention of the court to any points of objection.—Wallis v. Rhea & Ross, 20 Ala. 453.

[4.] The witness Bower was asked by the second interrogatory, whether he was not forced by threats to make the transfer to the beneficial plaintiff of the account in controversy, and whether he did not make it unwillingly and in consequence of such threats. To these questions the witness responded in the negative, and then proceeded to state the reason which induced him to make the transfer, and the facts upon which the reason was predicated. The latter part of the testimony was objected to, upon these three grounds : that it was not responsive to the interrogatory; that it was irrelevant to the issue; and that it was illegal. The first objection came too late, having been made for the first time on the trial.—McCreary v. Turk, 29 Ala. 244 ; Nelson v. Iverson, 24 Ala. 9. Certainly, that portion of the evidence objected to, which stated that the account sued upon was chiefly for advances made to the defendant, was both legal and rele-

vant; and the court was justified in overruling the objection of illegality and irrelevancy to the entire evidence, although every other part of it may have been inadmissible.

[5.] We can conceive of no principle upon which the admissibility of the words, "I did not *consider* that this was a loan to Wm. Bower & Co.," can be vindicated. They are not susceptible of a construction which would make them expressive of anything else than the opinion, which the witness, at the time of the transaction, entertained of its legal effect.—Thomas v. DeGraffenreid, 27 Ala. 651; Ward v. Reynolds, 32 Ala. 384. The court erred in overruling the objection to this evidence. So, also, we think the court erred in refusing to exclude the last clause of Bower's answer to the 7th interrogatory, which clause begins with the words, "I did not *consider*," &c. The two last named portions of evidence, which the defendant moved to exclude, are not so blended with the other parts as to make them incapable of separation; and if they were, we would be reluctant to consent to the argument, that the admissibility of illegal evidence was secured by its intimate connection with that which was legal.

There was also error in the refusal to exclude the words, "believing it due to said Smith under all the circumstances," found in the answer of Haig to the first interrogatory. His belief or opinion, as to what was due to Smith, was not admissible evidence.

[6.] The part of the answer of George Haig to the first cross-interrogatory, to which the defendant objected, was as follows: "It was understood between Bower and myself, and was agreed on before the failure of W. Bower & Co., to dispose of the claim in this way, and, as we thought, to the satisfaction of all parties concerned." So much of this testimony as shows the understanding and agreement between the witness and Bower was pertinent to the questions, whether the transfer to Smith was voluntarily executed, and had the voluntary assent of the two partners. The word "understood" was manifestly used as the synonym of *agreed*, or *contracted*.—Griffin v. Isbell,

17 Ala. 184. A part of the evidence being legal, there was no error in overruling the objection, notwithstanding the part which stated what was "thought" was not admissible evidence.

[7.] The evidence as to the scope and character of the business of commission-merchants and cotton-factors was admissible. It seems to have been a question in the case, whether certain acceptances, in the name of Bower & Co., the nominal plaintiffs, were inadmissible as a set-off, upon the ground that they were made by one partner, without the knowledge or consent of the other, for a consideration outside the scope of the partnership business. To this question, the evidence as to the nature and character of the business in which the partners were engaged, was pertinent.

The certificate of the clerk to the exemplification of the record, in the case of Saltmarsh v. Bower & Smith, shows that the *supersedeas* bond was omitted from the transcript. It is, however, unnecessary for us to inquire whether either of the objections to the introduction of the transcript ought to have been sustained, as the defect can be remedied.

[8.] Upon the principle settled in Rosenbaum v. The State, 33 Ala. 354, we decide, that there was no error in the refusal to permit a withdrawal, upon the trial, of a written admission previously made by the counsel.

[9.] The charge given by the court, without request, was to the following effect: If Saltmarsh had a judgment against Bower, and against Smith as his surety, and Bower & Co. had an account upon Saltmarsh, which, it was agreed between Bower & Co. and Saltmarsh, should be credited upon the judgment; and Bower & Co., in consideration of Smith's liability as Bower's surety upon the judgment, transferred the account to Smith, that he might have it credited upon the judgment, according to the agreement of Saltmarsh with Bower & Co.; and if the account was not credited upon the judgment, and Smith was compelled to pay off the judgment,—then Saltmarsh has no right to set off his debt upon Bower & Co. against the account, when sued upon in the name of Bower & Co.,

for the use of Smith. The fundamental proposition of this charge is, that Saltmarsh was deprived of the right of pleading a set-off against the account, because he agreed that it should be credited upon his judgment, and violated that agreement by not·allowing it as a credit, and by coercing payment of the entire judgment out of Smith. The correctness of this proposition can be tested by the two inquiries—whether an agreement, that an account of a judgment debtor upon the judgment creditor should be credited upon the judgment, takes away the judgment creditor's right of pleading a set-off when sued upon by the judgment debtor; and whether a violation of the agreement by the judgment creditor, and a coercion of the payment of the entire judgment, can have that effect.

Certainly, one owing an account may, by a valid contract, deprive himself of the right to interpose a set-off as a defense to a suit upon such account.—Davis v. Carlisle, 6 Ala. 707. But a contract that an account may be credited upon a judgment is not identical with a contract to forbear to claim a set-off against it. The two contracts are altogether distinct, in their terms, in the rights which they give, and in the obligations which they impose. One might well be willing to contract that an account on him should be credited upon his judgment, and yet be very unwilling to abandon the right of set-off against the account. A consent, therefore, to a contract to allow an account as a credit upon a judgment, is not a consent to waive the right of set-off against the account. The plaintiffs in this case cannot claim for their cause of action an exemption from liability to set-off, upon the ground of a contract of the defendant, whereby he has waived his right to that defense.

Does the fact, that the defendant has violated his agreement to allow a credit upon his judgment for the amount of his account, deprive him, when sued upon it, of the right of set-off? Upon the refusal of the judgment creditor to allow a credit upon the judgment, according to his contract, the defendants had a plain and adequate remedy, by a motion to the court which rendered the

judgment, for an entry of satisfaction, *pro tanto*, upon the judgment; and, if necessary, they might have protected themselves, *pro tanto*, by a *supersedeas* of the execution.—Bower v. Saltmarsh, 19 Ala. 274; Branch Bank at Mobile v. Coleman, 20 Ala. 140. Nor was this the only resort which might have been had upon the failure of the judgment creditor to allow the credit according to the contract, and his coercion of its payment. When the plaintiff in the judgment repudiated his contract, there unquestionably sprang up on the other side a corresponding right to abandon the contract and sue upon the account. But while the contract was subsisting, there could be no right of action upon the account. The mutual agreement, that the account should be credited upon the judgment, invested Bower & Co. and Saltmarsh with reciprocal rights; the former to a credit upon the judgment for the amount of the account, and the latter to a discharge of the account. While the contract was subsisting and of force, Saltmarsh had no right to enforce the collection of the entire judgment, and Bower & Co. no right to enforce the payment of the account, either for themselves, or for the use of one to whom they had assigned it after the contract. The right of action, therefore, upon the account, depends upon the abandonment of the contract that it should be credited upon the judgment, after its repudiation by the defendant. The bringing of the action upon the account involves the idea of an abandonment of the agreement, and is the assertion of a right inconsistent with it, and hostile to it. The plaintiff cannot thus abandon the contract, and yet avail himself of the breach of it by the defendant for any purpose. If the agreement was repudiated by Saltmarsh, and the other parties thereupon elected to abandon the contract, and to regard it as rescinded, and accordingly commenced this action, the parties stood as though the agreement had never been made. The plaintiff cannot say, the agreement has been so rescinded that I may maintain my action, yet it stands for the purpose of defeating the defendant's set-off.

An argument may be made, which would address itself

strongly to our sense of justice, to this effect: That Salt-
marsh had wrongfully coerced from Smith the payment
of a sum of money, equal to the amount of the
account, in violation of his agreement, that the judgment
should stand credited to the extent of the account. The
conclusive reply to this argument is, that if Smith had a
right to recover back the money so wrongfully collected
from him, it cannot be done in this action, which is predi-
cated upon the account of Bower & Co.

[10.] Record evidence in the case discloses that Smith
did make an effort, before the appropriate court, to obtain
an allowance of a credit upon the judgment against Bower
and himself, for the amount of the account; and that
after a trial had in the circuit court, a judgment was ren-
dered against Smith. It is suggested in the argument, that
when the charge speaks of the account not being allowed
as a credit upon the judgment, it refers to its disallowance
by the circuit court at the instance of Saltmarsh, and
upon his resistance. As the point will probably arise in
the court below upon another trial, we will consider the
charge as if its conclusion had been predicated upon a
judicial refusal, at the instance of Saltmarsh, to allow the
credit. The record discloses that the entire evidence
offered by Smith, upon the trial of his application to have
the credit allowed, was rejected; and there being no proof
before the court, a judgment against Smith was rendered.
The correctness of the account was not necessarily involved
in the decision against Smith. He could not recover,
unless he proved the contract to allow the credit. The
judgment, therefore, was not *prima facie* conclusive against
the correctness of the account.—Chamberlain v. Gaillard,
26 Ala. 504; Wittick v. Traun, 25 Ala. 317. The judg-
ment in that proceeding cannot be held, upon the record
itself, as an estoppel to an action upon the account; but,
on the contrary, the successful resistance of Smith's appli-
cation by Saltmarsh, considered in the light of the record
alone, and the subsequent coercion of the payment of
the entire judgment, was a repudiation of the contract to
allow the credit, and gave the plaintiffs a right to aban-
don that contract, and to resort to this action, but could

give them no right to take advantage of the contract in this case. On the contrary, the question whether there was a valid agreement that the account should be credited upon the judgment, was necessarily involved in the decision against Smith, on his proceeding to obtain the credit. The making of the agreement was a matter which necessarily pertained to the trial, and the decision against Smith was conclusive upon him that no such agreement had ever been made. Indeed, the trial and judgment in the circuit court, in the proceeding instituted by Smith to obtain a *supersedeas*, is conclusive, in this case, upon the question of an agreement to allow the credit. From this conclusion, as to the effect of the record, it follows that the charge is incorrect, if it be understood to refer to and include in its statements the record in the *supersedeas* proceeding of Smith v. Saltmarsh.

The reasoning which we have employed in reference to the charge given by the court of its own motion, is equally fatal to the charge which was given upon the plaintiffs' request.

[11.] Smith's petition for the *supersedeas* was admissible in evidence, as a part of the record; but it was not evidence of the facts stated in it; and the court should instruct the jury, that it cannot be regarded by them in that light.

The judgment of the court below is reversed, and the cause remanded.

STONE, J., not sitting.