## McBRIDE AND WIFE, ET AL. v. THOMPSON.

1. While the declarations of a party in possession of land or of personal property, are admissible as explanatory of his possession, it is not permissible to prove every thing he said in respect to the title, how it was acquired, &c.; and an inquiry embracing so extensive a scope, should be rejected.

2. Plaintiffs claimed title under their grand-father, H. who purchased the slave in question, in 1833, at a sale under execution against the estate of their father, A; in 1839 A made a deed of trust, embracing the slave, to W, to secure W and others for liabilities incurred, and to be incurred, as the sureties of the grantor, with a power of sale to reimburse them for advances; in 1841 the trustee sold the slave to the defendant: *Held*, That it was competent for the defendant to ask A, who was examined as a witness for the plaintiff, the following questions, viz: if W, at a time and place designated, did not ask him, in the presence of S, if there were other liens than the deed to W on the slave? If there were not other liens on the slave when W made the above inquiry? If he did not, after the trust sale in 1841, in the presence of certain persons, admit that he owed W a balance of $1500? Having answered the last question in the negative, the defendant was permitted to disprove the truth of the answer.

3. If one purchase slaves at a sale under a *fieri facias* with the money of the defendant, and then give them to the children of the latter, the donees cannot recover them of a person who afterwards purchases at a sale under a deed of trust subsequently executed by the defendant; if the sale under the deed be irregular, the purchaser may defend himself upon the ground of the trustee's right to the possession.

4. A charge to the jury must be considered in reference to the facts in the cause, and if thus applied it is correct, the judgment will not be reversed, though as a *universal proposition* it may be erroneous.

Writ of Error to the Circuit Court of Macon.

THIS was an action of detinue, at the suit of the plaintiffs, for the recovery of a female slave named Louisa, and her son George, the former aged about twenty-five, and the latter about five years of age. The cause was tried upon the general issue, a verdict was returned for the defendant, and judgment rendered accordingly.

The plaintiffs claimed the slaves in question under their grand-

father, Edmund Hobdy.   There was evidence tending to show, that the woman, Louisa, was in 1833, sold at sheriff's sale, in Barbour county, as the property of Samuel G. B. Adams, that Hobdy purchased her at the sale with the money of Adams, and took her into his possession.   Plaintiff then proposed to prove what Hobdy said as to his title to Louisa, whilst she was in his possession; the defendant objected to the introduction of this evidence; his objection was sustained, and the evidence excluded.

In 1839, Adams made a deed of trust to Thomas S. Woodward, of land, slaves, &c. in which was included the woman Louisa, to secure the trustee and others for liabilities incurred, and to be incurred, as the sureties of the grantor; with a power of sale to reimburse them for advances.   In 1841, the trustee sold the slaves to the defendant, and made him a bill of sale with a warranty of title.

It was also in evidence, that Adams, in 1837, executed a deed of trust to Devereux and Thompson, in which the woman Louisa was embraced.

For the purpose of contradicting Adams, who was examined as a witness for the plaintiffs, the defendant asked him, if Woodward, at a certain time and place, in presence of George Stone, did not ask him, Adams, if there was any other lien on the property.   The plaintiff objected to this question being answered, but the Court overruled the objection.   The defendant asked Adams, for the same purpose, if there were not other liens on the property in question when Woodward made the above inquiry, and this question was adjudged admissible, though objected to by the plaintiff.

The defendant then asked Adams, if he did not, after the trust sale in 1841, before certain persons, admit that he still owed Woodward a balance of fifteen hundred dollars, and he denied having made such an admission.   Defendant then offered to prove that Adams made such an admission after the trust sale; plaintiff objected, but his objection was overruled.

Defendant also offered to prove, that Woodward and Stone had paid money as the sureties of Adams, previous to the sale, under the deed of trust, and this evidence was admitted, notwithstanding the plaintiff objected.

The Court charged the jury, that if they believed there was

fraud in the purchase made by Hobdy at the sheriff's sale in Barbour; that the woman Louisa, was paid for by the purchaser with Adams' money, then Hobdy acquired no title by his purchase. The several questions arising upon the admission and rejection of the evidence, and the charge of the Court, are duly reserved by the bill of exceptions.

S. F. RICE and T. D. CARKE for the plaintiff in error, made the following points: 1. The declarations made by Hobdy, while he was in possession, were admissible, (Oden v. Stubblefield, 4 Ala. Rep. 40 ;) and even if he was a competent witness, his admissions should have been received. 2. Neither the time, place, or persons to whom Adams was supposed to have made the statements are particularized, nor was their materiality shown ; and they should have been excluded. It was a question of law upon facts, whether there were other liens ; the fact and not the conclusion should have been stated in inquiring what Adams said on this point. [6 Ala. Rep. 169.] 3. The deed of trust only authorized the trustee to sell the property conveyed by it, when a *judgment was rendered and an execution issued* against Woodward and Stone, and proof that money was paid by them as Adams' sureties was not in itself sufficient to have authorized the sale. 4. The charge to the jury cannot be supported, it assumes that Hobdy, in using Adams' money to pay for Louisa, did not borrow it, and has not since refunded it ; but that he expended it with a view to Adams' benefit, and to defraud his creditors, &c. It is further objectionable in assuming that the fact of the payment having been made with Adams' money is true, and that a title acquired by a purchaser under execution may be impeached by a person who had no interest in the property, or connection with the title at the time of the sale. ]4 Ala. Rep. 321 ; 5 Id. 58, 199 ; 9 Porter's Rep. 679.]

No counsel appeared for the defendant.

COLLIER, C. J.—The declarations of a tenant in the possession of land are admissible as part of the *res gestae*, (Bliss v. Winston, 1 Ala. Rep. 344 ; 2 Phil. Ev. C. & H. notes, 592 to 601 ;) and it has been often held that the same rule prevails in its utmost extent as to personal property. [Oden v. Stubblefield, 4

Ala. Rep. 40 ; see also, Phil. Ev. C. & H.'s notes, 592 to 601, 644.] But it is not to be understood that such declarations are admissible to every conceivable extent. True, the affirmation of the party in possession, that he held in his own right, or under another, is proper evidence as part of the *res gestae,* which *res gestae* is his continuous possession; but his declarations beyond this are no part of the *subject matter, or thing done,* and cannot be received as such. While it is allowable to prove statements of one in possession, and explanatory thereof, it is not permissible to show every thing that may have been said by him in respect to the title ; as that it was acquired *bona fide,* and for a valuable consideration ; was paid for by the money of a third person, or his own, &c. This we have seen, instead of being a part of the *res gestae,* would be something beyond and independent of it. Declarations, although not admissible upon the principle we have stated, are sometimes received, because they were against the interest of the party at the time they were made. It is needless to consider cases of the latter description, as it is clear that the declarations of Hobdy do not appear to have been against his interest.

The record is at fault in not disclosing with particularity what were the statements of Hobdy which the plaintiffs offered to prove; and the proposition was so broad, viz : *what he said as to his title to the slave Louisa,* that its rejection was entirely proper. It embraced not only what he said in respect to, and explanatory of his possession, but declarations as to the title, how, when, from whom, &c. he acquired it.

The objection made to the questions proposed to Adams were properly overruled. He was asked if, at a certain time and place, in the presence of a certain person, (naming him,) the inquiry was not made of him, whether there was any other lien on the property in controversy. This question was proposed by the defendant, upon the cross-examination of the plaintiff's witness, who it must be presumed had given testimony tending to sustain their title. Its tendency was to weaken that title and impair the effect of the testimony of the witness upon his examination in chief. An answer to the second inquiry, viz. whether there were not other liens on Louisa, when Woodward asked that question, might be important to the defendant, and could not prejudice the plaintiffs if their title was good. The same remark applies to the third question proposed to Adams.

In respect to the proof of the payment of money by the beneficiaries in the deed of trust, before the sale was made thereunder, it cannot be regarded as at all important in the present posture of this case. The cause was put to the jury upon the *bona fides* of Hobdy's purchase, and they were informed, that if they believed he paid for the woman with Adams' money, he acquired no title. This charge, as against Adams himself, or one who does not defend upon the ground of an interest in himself, or a third person, acquired for a valuable consideration, cannot perhaps be sustained. The bill of exceptions does not state the points intended to be presented with as much distinctness as it should have done, and we must give to it such an interpretation as seems to us most natural and reasonable.

Adams, it will be remarked, when asked whether he had not admitted, after the sale under the deed of trust in 1841, that he still owed Woodward a balance of fifteen hundred dollars, denied that he made such an admission. The defendant disproved the truth of the denial, and then proved that Woodward and Stone had paid money as sureties of Adams, previous to the sale by the trustee. This latter evidence was objected to, generally, but adjudged competent. It does not appear from all this, that there was any controversy as to the regularity of the sale under the deed, or whether the contingency occurred upon which the trustee was authorized to sell, viz; that a judgment was rendered against Woodward alone, or himself and Stone. No charge of the Court was prayed which brings up this question, and we cannot presume that it was intended to raise it.

The charge then must not be taken as the assertion of a universal proposition, but should be considered in reference to the case before the jury. In this view we may suppose the trustee had the right, under the deed, to seize the slaves conveyed by it, and it may be presumed, in the absence of all controversy upon the point, that the sale was regular. But if the defendant could claim nothing by his purchase, he might successfully resist a recovery, if Hobdy's purchase was fraudulent against creditors, by setting up the right of the trustee to hold the property under the deed.

This view is decisive of the case, and the result is, that the judgment must be affirmed.