## GILBERT v. BRADFORD.

1. An effort being made to establish, that G. had obtained a decree in bankruptcy, fraudulently, G. offered to prove, that six months before the institution of the proceedings in bankruptcy, one Shannon applied to him to borrow money; that G. informed him he had none of his own, but had

Gilbert v. Bradford.

some belonging to one Simmons, which he had no doubt Shannon could get, if Simmons did not want it. At the termination of this conversation, Simmons rode up, and G. handed him a roll of money, supposed to be $100: held, that this testimony was properly rejected.

2. The creditor proved, that G., the year he applied to be declared a bankrupt, had hauled with a dray, and team, managed by a slave named H., a large quantity of wood, which he sold for a considerable sum of money. To rebut this, G. offered to prove, that one S., at the time said hauling was done, had declared in his, G.'s presence, that the hauling was done on his, S.'s account: held, that the declarations of S. were properly excluded.

3. The creditor having proved, that one S., a few years after the bankruptcy, hired two slaves of L. G., who represented himself as the agent of the bankrupt in hiring the slaves, and that S. subsequently paid a part of the hire, as hire to the bankrupt, and the residue to another person: held, that this testimony was competent, there being no specific objection to that portion of it, which established the agency of L. G.

4. When a bankrupt's discharge is impugned for fraud, the creditor may prove the possession of the property by the bankrupt four years after the bankruptcy, and the jury must determine whether the property was fairly acquired, or by a fraudulent concealment of his effects.

5. Where an execution against G., is levied on slaves, which are claimed by S., upon a motion to quash the execution by G., S. having departed this life, a son of S., and joint legatee of his estate, is an incompetent witness for G.

Error to the Circuit Court of Autauga. Before the Hon. George Goldthwaite.

This was a motion, on the part of plaintiff, against defendant in error, to quash an execution, issued on a judgment rendered in favor of the defendant, against the plaintiff, on the 3d October, 1838, and also a levy made thereon, in April, 1848, upon the ground, that on the 22d October, 1842, he filed his petition for the benefit of the bankrupt act, upon which, he, in the due course of proceeding, was duly declared a bankrupt, and received a certificate of final discharge from his debts, &c. The defendant contested, and suggested fraud on the part of the plaintiff in said proceedings, in the wilful, and fraudulent, withholding of the property, at the time of his application, from the schedule which he filed.

On the trial of the issue made up between the parties, the plaintiff offered to prove by one Shannon, that he, Shannon, in the spring of 1842, had applied to plaintiff to borrow some

money, when plaintiff told him he had no money of his own, but had money of Maj. Simmons's, for wood he had sold for him, and that if Maj. Simmons did not want it, he had no doubt he could get it; that this conversation having terminated, Maj. Simmons immediately after drove up, when plaintiff handed a roll of money, probably about $100, to him, and that Maj. Simmons remarked, it had come in good time. To this testimony, the defendant objected, and the court excluded from the jury, all that plaintiff said to witness before Maj. Simmons rode up. It was proved by the defendant, that the plaintiff, in 1842, had hauled, with a dray and team managed by a slave named Hardy, a large quantity of wood, which he sold for a considerable sum of money, and to rebut this, the plaintiff offered to prove, that the witness had heard Maj. Simmons say, in the presence of the plaintiff, that the plaintiff was hauling, in 1842, the said wood on his, Maj. Simmons's account. The defendant objected to this evidence, and the court excluded it from the jury. The defendant proved, that one Shelby, in 1845, hired slaves, John and Hardy, from one Lemuel Gilbert, who then represented himself, as hiring the slaves as the agent of plaintiff, and that Shelby subsequently paid a portion of the hire to the plaintiff, who received it as hire, and another part of the hire to W. L. Yancey, Esq. The plaintiff objected to this testimony, but the court overruled the objection.

The defendant also proved, that within two weeks preceding the trial of the cause, the plaintiff had said to the witness, that he had made eighty bags of cotton in Louisiana, with six poor hands, and had hired four others, to help him pick it out. The plaintiff objected to this testimony, but the court overruled the objection. The plaintiff offered, as witnesses in his behalf, Frances Simmons, and William Simmons, but it being made to appear to the court that Major Simmons was dead, and the first named witness was his executrix, and as such, had interposed a claim to the property levied on under the execution sought to be quashed, which was still pending, and that both she, and the other witness, were legatees of said Major Simmons, the court, on motion of defendant, excluded them from testifying.

To the several rulings of the court, the plaintiff excepted, and now assigns them as error.

ELMORE & YANCEY, for plaintiff in error.

1. The declarations of E. W. Gilbert, plaintiff below, made to witness Shannon, that he had no money but what belonged to Simmons, and made immediately preceding the delivery to Simmons by said Gilbert of a roll of money, were wrongly excluded from the jury: 1. Because declarations of a party in possession of property, are admissible to show the character of that possession. Oden v. Stubblefield, 4 Ala. R. 40; McBride v. Thompson, 8 ib. 652; Spence v. McMillan, 10 ib. 583; Webster v. Smith, ib. 429; Abney v. Kingsland & Co. ib. 355; Beal v. Ledlow, 14 ib. 523. 2. Because they there against his interest, at the time they were made. Bliss v. Winston, 1 Ala. R. 344; Webster v. Smith, 10 ib. 429; 1 Phil. Ev. 255, 257. 3. Because they constitute a part of the *res gestœ*. Bohannon v. Chapman, 13 Ala. R. 646; Bliss v. Winston, 1 ib. 344; 2 Phil. Ev. C. & H.'s Notes, n. 444, 452, 481.

2. The declarations of Simmons, in the presence of Gilbert, in 1842, that the wood then being hauled by the latter, was his, Simmons's wood, was wrongly excluded from the jury, there being evidence then before them, tending to prove, that the land from which the wood was cut, and the teams and slaves who hauled it, belonged to Simmons: 1. Because, being an assertion of ownership, acquiesced in by Gilbert, long previous to the institution of this cause, it was against his then interest. See authorities quoted above. 2. It was part of the *res gestœ*. Spence v. McMillan, 10 Ala. Rep. 588; Stark. Ev. 47.

3. The declarations of one Lemuel Gilbert, at the time of hiring certain slaves, that he was the agent of E. W. Gilbert, the plaintiff below, were wrongly admitted to be proven by the defendant: 1. Because the fact of agency must be proven *aliunde*, before his declarations can be received. 2 Phil. Ev. C. & H.'s Notes, 188-9; Strawbridge v. Spann, 8 Ala. R. 825-6; Scott v. Crane, 1 Conn. 255; Scarborough v. Reynolds, 12 Ala. 259. 2. No declarations can be given in evidence, when the party making them, can be examined as a

witness, unless a part of the *res gestæ.* 1 Starkie, 390; B'k of Ala. v. McDade, 4 Porter, 270; Bradford v. Haggerty, 11 Ala. 701; 7 Cranch, 390; 3 Term, 708. 3. Because, there was no subsequent ratification of the act by E. W. Gilbert, that does not, with equal propriety, make Lemuel Gilbert agent of W. L. Yancey, as well.

4. The declarations of E. W. Gilbert, made just before the trial, of the amount of his cotton crop, and negro force, in Louisiana, during the year 1847, were irrelevant, and should have been excluded.   Petty v. D. & J. Walker, 10 Ala. 379.

5. The rejection of Wm. Simmons as a witness, on the ground of incompetency, was error; his interest was contingent, and remote, and went only to his credit.   1 Phil. Ev. 46-7, 55, 52; 2 Phil. Ev. C. & H.'s Notes, n. 88; Buller's N. P. 283-4; The King v. Boston, 4 East, 582; Bent v. Baker, 3 Term R. 27.   His only interest consisted in the effect of a verdict for plaintiff, on the claim case.   Stone v. Stone, use Underwood, 1 Ala. R. 582; Bettis, adm'r, v. Taylor, 8 Porter, 564, 578; Boren et al. v. McGehee, 6 Porter, 432; Perkins and Elliott v. Mayfield, 5 ib. 182; Collingsworth v. Horn, 4 S. & P. 227; Hooper v. Pair, 3 Porter, 401.


J. W. PRYOR, contra.

The only question in this case, is, did Gilbert fraudulently conceal the property specified, on the 22d October, 1842, the time he made his application to the bankrupt court? No fact would be competent evidence on the trial, unless it tends to prove, or disprove, the fraudulent concealment.

1. The declarations of Gilbert, to Shannon, were made about six months before the application of Gilbert, and could not therefore explain any thing that took place, at the time he made his said application.   That Gilbert had money six months before his said application was made, which belonged to Simmons, is wholly immaterial upon the trial of this cause.

2. The declarations of Simmons, made in 1842, in presence of Gilbert, are incompetent evidence.   It does not appear, whether the wood was hauled before, or after, said 22d October, 1842, nor whether the declaration of Simmons was made before, or after, said day.   Suppose they were made before said day, would they have any tendency to disprove

the fraudulent concealment, &c? Certainly not. The fact that Gilbert was hauling wood on "account of Simmons," before the said day, could not tend to prove, or disprove, the fraudulent concealment of the property specified, on said day. But if the declarations were made after that day, they would be equally incompetent, as not tending to prove, or disprove, the fraudulent concealment. But what does the declaration, that Gilbert was hauling wood *on account* of Simmons, mean? Does it mean, that he was hauling as the servant, or agent, of Simmons? that he was hauling with the dray and team and negro, belonging to Simmons? that Simmons had hired Gilbert to haul the wood with the team and negro of Simmons? What does it mean? No one can tell. Now, it must be borne in mind, that Gilbert could readily have proved the ownership of the negro and team in Simmons, if they really belonged to Simmons.

3. The declarations of Lemuel W. Gilbert, at the time he hired the slave to Shelby, were properly admitted. Lemuel W. Gilbert had possession of the negroes at the time he hired them—the declarations accompanied the act of hiring, and were therefore part of the *res gestæ*. Edward W. Gilbert, in pursuance of the declaration of L. W. Gilbert, collected part of the hire.

4. The declaration of Gilbert, that he had made eighty bales of cotton in Louisiana, with six poor hands, was properly admitted. The question was, did Gilbert conceal money and property on 22d October, 1842? The record shows, that he was not engaged in any lucrative business until he removed from Alabama, in the spring of 1847. Then, the question, where did he get the six hands, with which he made the cotton, became very material. The amount of cotton was wholly immaterial, and could not affect the case. The declaration was admissible, as showing that Gilbert had six hands. It was for him to show where he got them, after the plaintiff proved that he had not been engaged in any business by which he could have made money. He had a family to support. How did Gilbert acquire the $800 which he loaned to Simmons in 1843, the year after his application to the bankrupt court? He was engaged in no business by which he could have made money, and this is shown by the

record. It was the same money which he was charged by the plaintiff with having concealed, 22d October, 1842. But this declaration was admissible on two grounds: 1. As showing that he had negroes in his possession, which he could not have got by any business he had been engaged in. 2. If the six negroes with which he made the cotton, can be supposed to be part of those he got from Simmons's estate, instead of the land for the $800 due by Simmons, then this would tend to prove that Simmons owed the $800 on the 22d October, 1842, as Gilbert could not have made the money in 1843, by any business he was engaged in, and he does not show how he got it, &c.

COLLIER, C. J.—1. We have repeatedly held, in conformity with the generally received doctrine, that the declarations of a party in the possession of real or personal property, that he held it in his own right, or under another, is proper evidence as a part of the *res gestæ*, which *res gestæ* is his possession, but such declarations beyond this, are no part of the *subject matter*, or *thing done*, and cannot be received as evidence, upon the hypothesis that they are. The citations by the plaintiff in error, establish this proposition.

The answer of plaintiff, when applied to by Shannon to borrow money, that he had no money of his own, but had some belonging to Simmons, for wood sold for the latter, which he had no doubt that Shannon could get, if Simmons did not want it, perhaps does not appear to have been made simultaneously with the payment of money to the latter. Simmons was not present when the conversation took place, but "drove up immediately after" it had terminated, when the plaintiff handed him "a roll of money, probably about $100." Whether Shannon remained with the plaintiff until Simmons's appearance, or the subject of the conversation had not been dismissed, does not distinctly appear; but if necessary, it should perhaps be intended in favor of the decision of the circuit court, that it was not continuous, and a part of the act by which the plaintiff handed the money. Be this, however, as it may, the declarations are not admissible to the extent to which they go, viz: to show that the plaintiff had no money but what belonged to Simmons. The payment

to the latter, of a sum supposed to be $100, was the *res gestæ*, and declarations as a part of this, which was the *thing done*, are proper evidence to explain it. But the declarations which were offered, went beyond the *res gestæ*, and tended to show, not only that the payment of the $100 was *bona fide*, but that the plaintiff had no more money. Thus, we see, that that which it is insisted was a part of the transaction, is greater than the whole, and the citations to which we have referred, clearly establish that it was properly rejected.

It certainly cannot be inferred, from any thing in the record, that the declarations were against the interest of the plaintiff, so as to legalize their admission upon that ground. We will further add, that we cannot very well perceive, from the case as presented, how the rejected testimony could explicate the question of fraud in obtaining the certificate of bankruptcy—the proceeding upon which it is founded not being instituted until six months after the conversation referred to.

2. The remark of Simmons, in the presence of the plaintiff, that the latter was hauling wood on his account, were rightly rejected at the trial. It does not constitute a part of the fact of hauling, but it asserts something independent of it, viz : that the dray and team employed, or the wood hauled, were Simmons's, and that the plaintiff was in his service. In McBride and wife, et al. v. Thompson, 8 Ala. Rep. 650, we said, " while it is allowable to prove statements of one in possession, and explanatory thereof, it is not permissible to show every thing that may have been said by him in respect to the title ; as that it was acquired *bona fide*, and for a valuable consideration ; was paid for with the money of a third person, or his own," &c. Here, it does not appear that Simmons was in possession of the dray and team, although he may have been the proprietor of the land from which the wood was cut, yet there was no *res gestæ* with which his declarations can be legitimately connected, or to which they are properly referable. They go quite beyond the business in which the plaintiff was engaged, and tend only to establish Simmons's right to the profits which resulted from it.

True, we have often held, that where a party states a fact in the presence of another, which the latter is interested to

dispute, if he is silent, his assent to the statement may be inferred. But, in the present case, there is nothing to warrant the presumption, that the plaintiff's interest was opposed to the assertion of Simmons, even if the affirmation of Simmons, could, by implication, be made the declaration of the plaintiff. Conceding, however, that such is its effect, and still, it may be asked, if the plaintiff could make evidence for him, by declaring that he was in another person's employment? To maintain such to be law, would require the admissibility of declarations, as connected with the *res gestæ*, to be carried beyond all precedent, that has come under our observation.

3. A witness, offered at the instance of the defendant, testified, that in 1845, he hired of Lemuel Gilbert two slaves, the latter representing himself as the agent of the plaintiff—the witness subsequently paid a " portion " of the hire for these slaves to the plaintiff, who received it *as hire;* another portion he paid to a third person, but in what character it was received by such person, does not appear. The question arising upon these facts, is, whether the declarations of L. G., as to the character in which he hired the slaves, were admissible. It is an established rule, that the fact of agency must first be shown, before the declarations of the supposed agent can be received as evidence. Strawbridge v. Spann, 8 Ala. Rep. 820; Scarborough v. Reynolds, 12 Ala. R. 252. For this purpose, the admissions of the principal are evidence, or the agency may be proved by the agent as a witness. 2 Phil. Ev. C. & H.'s Notes, 188, 189. These citations are quite sufficient to show, that the declarations of Lemuel Gilbert were inadmissible to prove he was the agent of the plaintiff. Yet, if L. G. was in possession of the slaves at the time he hired them to Shannon, his declaration that they were the property of another person, was admissible as a part of the *res gestæ*, to show that he did not claim them as his own. McBride and wife, et al. v. Thompson, 8 Ala. Rep. 650, is an authority directly to the point. That he was in possession at the time, must be intended in favor of the judgment of the circuit court, as the bill of exceptions does not negative the fact, and it appears that Shannon received the slaves under his contract. If, the plaintiff supposed the jury would regard the declaration as establishing the fact of agen-

cy, he should have prayed the court specially to instruct them, that it could not have that effect, and to point out the purpose for which it was admitted. No exception was taken to the testimony, tending to show a subsequent ratification of the hiring by the plaintiff, and if there had been, we should incline to think, that it was entirely competent.

4. In Hargroves v. Cloud, 8 Ala. Rep. 173, we said, the possession of property by a bankrupt, at the time of his discharge, or immediately after, which by industry he might reasonably have acquired, does not warrant the presumption, that he did not make a full surrender of his estate; but if the value of the property is so great, as to make it improbable that it was earned since the filing of the petition in bankruptcy, it devolves upon the bankrupt to show how he became the proprietor of such property, when his discharge is impugned for fraudulent or wilful concealment. Under the authority of the principle of this decision, it was clearly competent for the defendant to have inquired into the extent of the plaintiff's planting interest in Louisiana, even four years after he obtained his certificate, that the jury might determine, from all the facts, as to his sources of income, whether that interest has not been acquired, or increased by the intentional concealment of his estate from the court that ajudged him a bankrupt. The testimony upon this point was properly received.

5. It appears, that slaves, supposed to be the property of the plaintiff, had been levied on under the execution, which it was the object of the present proceeding to quash; that these slaves were claimed by Mrs. Simmons, as executrix of her deceased husband, which claim was still pending, and undetermined. A son of the testator, and *a joint legatee of his whole estate, with others*, of which no final distribution had been made, was offered as a witness for the plaintiff. Young Simmons was clearly an incompetent witness—his interest extended beyond the question litigated, and was an interest in the result of the controversy, in respect to which he was required to testify. If the execution was quashed, then it would become inoperative, and the levy, which rested upon the continuance of its efficacy, would fall with it; the plaintiff in execution, on whom the *onus* lies of proving the liabil-

ity of the property levied on as against the claimant, would fail to prove the first, and indispensable fact, viz., that there was an operative execution to support the levy; consequently, the claimant would succeed.   Blount and Stanley v. Traylor, 4 Ala. Rep. 667.   This view is sufficient, to show the interest of the witness in the plaintiff's success, and he was therefore properly rejected.   The result is, that the judgment of the circuit court must be affirmed.