[Brooklyn Life Insurance Company *v.* Bledsoe.]

52 538
95 360
52 538
96 570
52 538
107 299
52 538
121 551

# Brooklyn Life Insurance Company *v.* Bledsoe.

## *Action on Policy of Life Insurance.*

1. *Declaration; what sufficient.* — Under the provisions of the Revised Code a declaration on a policy of life insurance is sufficient if it contain a statement of the contract or policy, followed by a general averment that the plaintiff had complied with all the provisions on his part, and that the defendant had not in a specified way performed his part. The conditions of the policy, whether conditions precedent or subsequent, and their performance, need not be alleged other than in the general allegation of performance on the part of the plaintiff; and although the performance of a condition precedent is averred, proof excusing performance may be made under it.

2. *Policy of life assurance; what not void.* — A policy of life insurance is not void for uncertainty because the beneficiaries are designated only as "children of John Wilson Bledsoe."

3. *Same, action on; what evidence inadmissible.* — Declarations made by the assured after his premium fell due, in the course of a partnership settlement in which he had charged himself with partnership debts collected, that he made the collections to pay the premium, but did not because he was informed by the secretary of the defendant that his policy was cancelled, are mere *hearsay*, and wholly inadmissible evidence in an action on the policy.

4. *Same.* — Evidence that the assured spoke of the premium coming due, and mentioned the source from which he expected to obtain money to pay it, and that the witness offered to loan the requisite amount, which offer the assured said he would take if disappointed, is also mere hearsay, and inadmissible testimony for the plaintiffs in an action on the policy.

5. *Ability to pay premium; when evidence of, admissible.* — Evidence of the ability of assured to pay the premium when it fell due, would be admissible in connection with evidence showing a legal excuse for non-payment.

6. *Cancellation of policy; effect of.* — The plaintiff proved payment of the first premium on a policy of life insurance to defendant's agent, and introduced a letter written by the secretary of defendant in answer to the assured's request for an extension of the time in which to pay the second premium, stating that the policy had been cancelled on the books of the company because no payment had ever been made on it, and requesting him if he had made payment to a deceased agent to send the defendant company a certified copy of the receipt, and to state when, where, and to whom the premium had been paid, as no payment had been sent the company, and it had no record of the payment of any premium. *Held,* 1. The cancellation of the policy on the books of the company did not amount to a rescission of the contract, or of itself affect the validity of the policy or the rights of the assured and beneficiaries under it. 2. It was competent for the insurer (the cancellation and letter in relation thereto being relied on as an excuse for non-payment of the premium when it fell due) to show that the cancellation was made in ignorance of the delivery of the policy or the payment of the premium, so as to relieve itself of the charge of an intentional abandonment of the contract with the knowledge that the assured had performed on his part, and was relying on it. 3. The cancellation of the policy and letter written in relation thereto were not a sufficient excuse for failing to pay or tender the premium when it fell due, although the cancellation became known to the assured only a few days before the premium was payable.

7. *Decree of insolvency; when incompetent evidence.* — A decree of the probate court declaring the assured's estate insolvent is not evidence of his insolvency in a suit by his children, beneficiaries under the policy, against the insurance company.

8. *Insurance law; violation of; who cannot invoke.* — The rule that a contract founded on an act prohibited by statute is void, is subject to the qualification that although the legislature may forbid the doing of a particular act, yet unless the act itself is declared void, a party not privy to it, or involved in the guilt of the transaction, may recover of the guilty actor. The insurance company doing business here without complying with the state laws, and not the citizen with

[Brooklyn Life Insurance Company v. Bledsoe.]

whom it contracts, violates the statutes, and it cannot avail itself of its own viola-
tion of law to avoid its contract.

9. *Non-performance; what necessary to constitute excuse for.* — Where the act of
a party, for whose benefit conditions precedent attach, is relied on as an excuse for
non-performance, it must be the proximate and not the remote cause of the failure
to perform, and be of such a character as to render performance *impossible, or in-
duce the belief that it was waived, or if attempted would not be accepted.*

APPEAL from City Court of Montgomery.

Tried before Hon. JOHN D. CUNNINGHAM.

This was an action commenced by the seven children of
John Wilson Bledsoe, who were all minors suing by their next
friend, Nathaniel Bledsoe, against the " Brooklyn Life Insur-
ance Company," to recover the amount of a policy of life as-
surance which it issued upon the life of their father. The
complaint contained two counts. The first claimed of the
defendant the sum of $5,000, with interest, " upon a certain
policy of assurance entered into by defendant on the 19th day
of February, 1870, for the said sum of $5,000, and numbered
7742, in and by which it was agreed, in consideration of the
payment by plaintiffs of $203$\frac{25}{100}$ dollars to defendant, and in
consideration of the annual premium of $203$\frac{25}{100}$, to be paid on
or before the 19th day of February in each year during the
continuance of the policy, and in consideration of the represen-
tations and agreements contained in the application therefor,
the defendant did bind itself to assure and did assure the life
of said John Wilson Bledsoe for said sum of $5,000 unto the
plaintiffs for the term of his natural life, with participation in
surplus, and did agree to pay to plaintiffs the said sum of
$5,000 within sixty days after due notice and proof of the
death of said John Wilson Bledsoe, — the balance of the year's
premium and all other indebtedness to be first deducted."
The count then avers a refusal to pay for more than sixty
days after due notice and proof of the death of John Wilson
Bledsoe, and that plaintiffs are his children.

The second count is based on a policy of life assurance,
" which the plaintiffs, under the name and style of the chil-
dren of John Wilson Bledsoe, caused to be made and issued
by defendant, whereby the defendant, in consideration of the
representations and agreements ·contained in the application
therefor, and of the sum of $203$\frac{25}{100}$ to defendant in·hand paid
by plaintiffs, and a like sum to be paid on or before the 19th
of February in each and every year during the continuance of
the policy, did on the 19th of February, 1870, assure the life
of John Wilson Bledsoe in the sum of $5,000, unto the plain-
tiffs for his natural life, with participation in surplus, and did
promise and agree with plaintiffs to pay said sum within sixty
days after notice of his death and due proof thereof," &c. The
count then sets out at length the terms, conditions, and stipu-

lations upon which the policy was issued, but not the statements and representations made to obtain it, and avers that at the time of making the same, as well as at the time of the death of John Wilson Bledsoe, the person whose life was assured, they were his only children "and interested in his life to the amount for which he was assured," and the "nature of their interest was stated to the defendant on the 19th of February, 1870." The count then avers the death of John Wilson Bledsoe, and that notice and satisfactory proof were made to defendant, and that "although plaintiffs have in all things conformed themselves to observe, performed, and kept in all things the said policy of assurance, and the conditions and stipulations contained on their part and behalf to be performed and observed, according to the form and effect of the said policy of insurance and of the said conditions and agreements," the defendant, for more than sixty days after due notice and satisfactory proof of death, has refused and still refuses payment, &c.

The defendant demurred to both counts. To the first, because the payments of premiums during the continuance of the policy was not averred, and because the representations and terms on which the policy was issued are not stated, nor is it alleged that they have been performed. 2d. Because the contract was made with minors incapable of entering into or ratifying it. The grounds of demurrer to the second count were: 1st. That plaintiffs were minors at the time of the application and statement and making of the agreement, and are still minors incapable of making or confirming the contract. 2d. That it is not specifically averred that each premium was paid on or before the 19th day of February in each year during the continuance of the policy, agreeably to the allegations of its conditions. 3d. Because the representations on which the policy was obtained are not set out, nor is there any allegation as to their truth or falsity. 4th. Because the contract declared on is void for uncertainty — it being made with the children of John Wilson Bledsoe.

The court overruled the demurrer to the second count, and sustained it to the first.

On the trial the plaintiffs offered in evidence the policy of assurance on which the suit was founded. This policy shows that it was entered into on the faith of the representations and agreements contained in the application therefor, "and of the sum of \$203$\frac{25}{100}$ in hand paid by children of John Wilson Bledsoe," and a like sum to be paid annually thereafter on 19th of February in each year. One of the conditions upon which the policy was issued was, that "if the said children of John Wilson Bledsoe shall not pay or cause to be paid the

premiums as aforesaid in cash, on or before the day herein mentioned for the payment thereof, . . . . then in such case the company shall not be liable for the payment of the sum, or any part thereof, and the policy shall cease and be null, void, and of no effect." It concludes as follows : " In witness whereof the Brooklyn Insurance Company have by their President and Secretary signed and delivered this contract at the City of New York, in the State of New York, this 19th day of February, 1870." The introduction of the policy was objected to, on the ground that it showed a variance between the contract declared on and that disclosed by the policy ; the one being a contract with " the children " of Bledsoe, and the other a contract with " children " of Bledsoe. The objection was overruled and the defendant excepted.

The testimony showed that application for the policy was made through one Humphries, an agent of defendant and a resident of Alabama, who delivered the policy in this State, and at the date of the delivery executed his receipt, for the first annual premium, " to the children of John Wilson Bledsoe." This was in March, 1870. Humphries died in the November following, without ever having reported to the " Brooklyn Life Insurance Company " the payment of the premium or the delivery of the policy. The second annual premium fell due February 19, 1871. At that time Bledsoe lived at Midway, Bullock county, Alabama, and continued to reside there until his death, on the 28th of December following. The usual time occupied in the transmission by mail of a letter from Midway to New York, the home office of defendant, was four days. On the 6th day of February, 1871, eleven days before the annual premium fell due, Bledsoe wrote and sent by mail the following letter : —

" MIDWAY, Alabama, *February 6th*, 1871.

" MR. W. M. COLE, *Secretary Brooklyn Insurance Co. :*

" DEAR SIR, — As my premium is about to fall due, I have concluded to write to the company to beg indulgence upon payment of the next premium. Money is exceedingly scarce and hard to get, owing to the low price of cotton. I notice in my policy that there are no days of grace allowed by your company. I have thought your company might extend. I hate very much to forfeit my insurance, but I am afraid I will not be able to pay my premium at maturity, and I further more hate to lose the money I have already paid. I hope your company will allow me time on my next premium. I will pay it during the year with interest, and am willing to give my note, and if I can spare the money any time soon I will forward it to you. Please let me hear from you soon, as my

premium is due the 19th inst.   Hoping to hear from you soon, I am respectfully yours,			J. W. BLEDSOE."

This letter, however, was not introduced by the plaintiffs, and without reference to it, they offered in evidence the following letter, which it was admitted was written by the secretary of defendant: —

"*February 14th,* 1874.

" J. W. BLEDSOE, Esq., Midway, Ala. :

" DEAR SIR, — Yours of the 6th inst. just received.  Your policy stands on our books as cancelled ; no payment ever having been made to us upon it.  If, however, you did pay it to the late Mr. Humphries, please send us a certified copy of the receipt you have for such payment, and also state when and where and how it was paid, as we have no record of any payment, no premium having been sent to us.

" Respectfully yours,

" W. M. COLE, *Secretary.*"

These letters constituted the whole correspondence between Bledsoe and the insurance company.   There is no evidence to show that the second annual premium was paid, or that he or any other person ever tendered or offered to pay the premium, although Bledsoe lived some ten months after the receipt of the letter from Cole.   The defendant objected to the admission of the letter because the one to which it purported to be a reply had not been produced or accounted for ; because Bledsoe was not a party to the contract ; and because under the averments of the complaint it was irrelevant and inadmissible. The objection was overruled, and the defendant duly excepted.

The plaintiff then offered in evidence an affidavit of Dr. B. F. Coleman, which it was agreed might be taken instead of his deposition.   It appeared from this that Coleman and Bledsoe had been partners in the practice of physic during the years 1869 and 1870 ; that the partnership was dissolved on the 31st of December, 1870, and on a settlement had on the 16th day of March, 1871, Bledsoe charged himself with four hundred dollars collected from the accounts, " remarking at the time of the settlement that he had intended to use a portion of the same for the purpose of paying a premium on an insurance policy of the Brooklyn Life Insurance Company, which he held at the time of the settlement, had it not been for a letter which he received from said company and which letter disclaimed all knowledge of him, as his name was not in their books."   The witness testified he read the letter and knew its contents.

To the admission of this evidence, especially that portion of it which is marked in quotation, the defendant objected, on the ground that it was illegal and irrelevant evidence, being mere

hearsay and not part of the *res gestæ.* The objection was over-ruled, and defendant excepted.

The plaintiffs then offered in evidence the deposition of one Daniel. In one of the answers to interrogatories propounded by the plaintiff, Daniel testified that in February, 1871, Bled-soe's accounts and books were worth about two thousand dol-lars, &c.; that "about this time Dr. Bledsoe came into his office and said that his premium in the Brooklyn Insurance Company would soon be due, and that he had not collected the money to pay the same, 'but had the promise from one of his patrons;' and witness remarked that rather than have him for-feit the policy he would lend him the money, to which he re-plied that he would call if he needed it. Witness does not know what arrangement he made, as he did not call, but knows his willingness and ability from the foregoing facts." Defendant's objection to the admission of this testimony was overruled, and defendant excepted.

The defendant introduced the depositions of Bouck, the pres-ident, Cole, the secretary, and Dutcher, the cashier, of defend-ant, and on motion of plaintiff the court excluded from the jury the answer of each of these witnesses to interrogatories, showing that defendant had never received any premium on said policy, or report from the agent as to its payment, and had never received any information of the delivery of the policy or payment of the premium, until Bledsoe's letter. To this rul-ing the defendant duly excepted.

The defendant then offered evidence that the Brooklyn In-surance Company had not made or filed the statements re-quired by law to be made to the auditor, or filed the same in the office of the judge of probate of Bullock, the county in which Bledsoe resided, or obtained any certificate of authority in either of the years 1869, 1870–1871, or otherwise complied with the state insurance laws. On the objection of the plain-tiffs the court would not allow this proof to be made, and de-fendant duly excepted.

The defendant then offered in evidence the decree of the probate court declaring John Wilson Bledsoe's estate insolvent, together with the report of insolvency.

Presentation of proofs of death, &c., was admitted. The foregoing is substantially all the evidence. The court gave a general charge, which need not be further noticed, and at the request of the plaintiffs charged the jury if they believed, from the evidence, "that John Wilson Bledsoe paid on the 4th of March, 1870, the first premium due on said policy of insurance, and on the 6th day of February, 1871, wrote to defendant the letter of that date read in evidence, and in time to have re-ceived a letter in reply before the second annual premium be-

came due and payable, and in reply thereto the defendant wrote the letter dated February 14, 1871, read in evidence, and that said John Wilson Bledsoe had prepared and was ready to pay the second annual premium on the 19th of February, 1871, and was prevented from paying the same in consequence of said letter of February 14, 1871, then the non-payment of the annual premium on the 19th of February, 1871, was not a forfeiture of the policy and no bar to a recovery." The defendant excepted to the giving of this charge, and requested the following written charges: 1. " If the jury believe that the plaintiffs failed to pay or offer to pay the premium on the policy when it fell due, February 19, 1871, and that John Wilson Bledsoe wrote the letter purporting to have been written by him on the 6th day of February, 1871, and received in reply the letter purporting to have been written on the 14th of February, 1871, that said last letter furnishes no sufficient excuse for such failure." 2. " If the jury believe from the evidence that plaintiffs failed to pay or offer to pay the premium falling due February 19, 1871, on that or any other day, that then the letter written by Cole furnished no sufficient excuse for such failure." The court refused to give either of these charges, and the defendant duly excepted.

The various rulings of the court to which exception was reserved are now assigned as error.

ARRINGTON & GRAHAM for appellant. — The demurrer to the second count should have been sustained. The policy being made " on the faith of the statements in the application," appellant was bound to set them out and aver their truth. 66 N. C. 70 ; 39 Ind. 475 ; 14 M. & W. 95 ; 2 Bigelow Insurance Reports, 631. The policy was void for uncertainty. 22 Ala. 673. The designation of one of the contracting parties as " children " of a man, is too vague. The Cole letter was inadmissible. Bledsoe was not a party to the contract. The letter worked no estoppel. It was not relevant to the issue, and the letter to which it was a reply was not produced. Coleman's testimony should have been excluded. What Bledsoe then said, as testified to by Coleman, constituted no part of the res gestæ of this transaction, or even of the settlement with Coleman. Defendant was not present. There was no proof that Bledsoe had ever offered to perform the contract by tendering payment of the premium. It was a mere statement of what he *had intended* to do in a time past, about a matter other than that to which the conversation related. It was mere *hearsay.* 1 Greenleaf, §§ 108–10 ; 20 Ala. 123 ; 25 Ala. 38 ; 11 Ala. 698 ; 31 Ala. 266 ; 17 Ala. 366 ; *Pearson & Wife* v. *Darrington,* 32 Ala. 227. Daniel's testimony was even

[Brooklyn Life Insurance Company v. Bledsoe.]

worse. The proof that the company had not complied with the insurance laws should not have been rejected. 1 Brick. § 34, p. 377. This is not a statute for revenue, and it applies as well where the policy is signed outside the State as when made here. The contract cannot be enforced here. *Williams* v. *Cheny*, 3 Gray, 215 ; *Hyde* v. *Goodnow*, 3 Coms. 267 ; *Huntley* v. *Merrill*, 627. The payment of each premium as it fell due was a condition precedent to the further continuance of the policy, and it must be paid, or performance waived or excused, before any recovery can be had. The Cole letter was no waiver or excuse for non-performance. It merely stated that the policy taken out through Humphries was cancelled on the books of the company, gave the reason therefor, and asked for information. Even if appellees' excuse were valid, a party cannot acquiesce in the abandonment of a contract — fail to perform or offer to perform his part — and at the same time compel the complete performance by the other side. The contract is reciprocal. If he insists on the contract as continuing, he must allege and prove his readiness to perform his part. In this case there has been no offer to perform, and no allegation even of readiness to perform. If this policy was in force at the time this suit was brought, then it would have continued in force indefinitely as long as Bledsoe lived. The proposition asserted is virtually this : If Bledsoe continued to live, he would acquiesce in the abandonment of the contract ; if he died, the beneficiaries would revive and enforce it.

STONE & CLOPTON, *contra.* — The cancellation of the policy was the wrongful act of the defendant. When the defendant notified Bledsoe of it, the company waived the payment of that premium. *Baker* v. *Union Life Ins. Co.* 37 Howard (N. Y.), 126 ; May on Life Insurance, §§ 175–88. If not a waiver, it was an act preventing payment, and this coupled with proof of ability to pay will excuse payment. *McKleroy* v. *Tulane*, 34 Ala. 81. Bledsoe's letter to the company was introduced to show his inability to pay ; proof of his ability was competent to rebut this. The evidence of Coleman was admissible. The declarations happened in such a way as to preclude the suspicion of premeditation or design ; they related to the settlement, and were coincident in point of time with it, and tended to elucidate it. *Gandy* v. *Humphries*, 35 Ala. 617 ; *Kelly* v. *Phillips*, 29 Ala. 68. They also showed ability to pay, and the fact that the non-payment was induced by the act of defendant. The answers of Bouck, Dutcher, and Cole were properly excluded. The agency of Humphries was not disputed, and the law held the company to a knowledge of the payment. The consequences flowing from it, and the subsequent cancel-

lation of the policy, cannot be avoided by proof that the defendant did not *actually* know what it is conclusively presumed to know.    Our insurance statutes were passed to protect and not to *snare* our citizens.    The violation of these laws by the defendant does not absolve it from the contract.    The statutes do not declare the contracts *void*.    The appellees are not guilty actors in the transaction.    *Whetstone* v. *Bank of Montgomery*, 9 Ala. 875 ; *Bank of Montgomery* v. *Crocheron*, 5 Ala. 250 ; *Pistole* v. *Street*, 5 Port. 64 ; 25 Ala. 266 ; 1 Stewart, 278. The evidence of excuse for non-payment was admissible under the complaint.    Rev. Code, § 176 ; 9 Porter, 300 ; 7 Porter, 175.

BRICKELL, C. J. — The Code provides, " All pleadings must be as brief as is consistent with perspicuity, and the presentation of the facts or matter to be put in issue in an intelligible form ; no objection can be allowed for defect of form, if facts are so presented that a material issue in law or fact can be taken by the adverse party thereon." R. C. § 2629.  *Again*, " Any pleading which conforms substantially to the schedule of forms attached to this part is sufficient." R. C. § 2630.  Independent of statutory provisions, the rules of pleading are the same in their application to the contract of insurance as to other contracts.    The contract or policy of insurance must be declared on, *in hæc verba*, or according to its legal effect; the plaintiff's interest in the subject of insurance ; the payment of the premium ; the inception of the risk ; the performance of any precedent condition or warranty contained in the policy, and the loss, or happening of the event, on which within the terms and meaning of the policy the liability of the insurer attaches, must be alleged. 2 Green. Ev. § 376.  The general rule applicable to all executory contracts is, that if the defendant's performance depended upon a condition precedent, the plaintiff must aver the fulfilment of such condition, whether it is affirmative or negative, or to be performed or observed by him, or the defendant, or a mere stranger to the contract, or must show an excuse for non-performance.    If non-performance *is* excused, *the matter* of excuse must be distinctly averred.    1 Chit. Pl. 320–26.    These rules of pleading at common law have been modified, and to some extent abrogated by the statutory provisions to which we have referred. The schedule of forms attached to the third part of the Code has the form of a complaint on a policy of marine insurance. R. C. p. 676.  It is very brief, and is a simple statement that the plaintiff claims of the defendant the value of certain goods, not describing them, which the defendant on a certain day insured against loss or injury, against perils of the sea, and other

perils in the policy mentioned, from a certain port to another, on board a certain vessel, which goods were lost by the shipwreck of the vessel on her voyage, of which the defendant had notice. This is a bare statement of a legal conclusion, not of facts from which the court on an inspection of the pleading could draw the conclusion that the plaintiff had a just cause of action against the defendant. There is also a form of complaint (R. C. p. 675) on a dependent covenant or agreement. It is a mere allegation that the plaintiff's cause of action is the breach of a covenant or agreement entered into, on a certain day, the substance of which is to be stated, followed by the general statement, that although the plaintiff has complied with all its provisions on his part, the defendant has failed to comply with the terms or stipulations forming the breach, of which complaint is made. These forms have the force of law. *Crimm* v. *Crawford*, 29 Ala. 623. They will support a judgment by default, as if every fact essential to the plaintiff's right of recovery was formally averred. *Randolph* v. *Sharpe*, 42 Ala. 265; *Letondal* v. *Huguenin*, 26 Ala. 552; *Pickens* v. *Oliver*, 29 Ala. 528; *Pike* v. *Elliott*, 36 Ala. 69.

We shall not inquire whether the complaint, if tested by the rules of pleading at common law, would be subject to the causes of demurrer interposed. For if it is conceded that under these rules the plaintiffs should have set out the application for insurance, and averred the truth of its statements, the necessity of the averment is dispensed with by these statutory enactments. Whether the statements in the application are to be regarded as conditions precedent or warranties, it was not necessary for the plaintiff to notice them. A mere statement of the contract or policy, followed by the general averment that the plaintiffs had complied with all its provisions on their part, and that the defendant had not in a specified matter performed it, is sufficient. In defence, the defendant may set up the non-performance of any condition precedent, or the breach of any warranty, on which his liability depends, and it will be as available as if it appeared on the face of the complaint. The complaint is certainly in substantial conformity to the analogous forms prescribed by the Code, and is therefore sufficient.

Nor was the complaint demurrable, because, according to its averments, the policy was void for uncertainty. The uncertainty is supposed to lie in the designation of the beneficiaries by the general term of "*Children of John Wilson Bledsoe.*" In deeds and in devises, the donee or devisee is frequently described merely by his relation to another, and a gift or devise to children has never been supposed to want any element of certainty. In policies of life insurance, the beneficiaries are often designated by no other term than that of children of the

person whose life is assured, and their rights have been enforced. Bliss on Life Ins. 530–35. There was no variance between the complaint and the policy offered in evidence. " Children of John Wilson Bledsoe," and " The children of John Wilson Bledsoe," embrace the same persons, and no others, and are but different modes of designating the same class.

Several of the exceptions resolve themselves into a single point. The complaint avers the plaintiffs have performed all the conditions on which their right of recovery depends. The proposition in the circuit court was, under this averment, to make proof of an excuse for the non-payment of an annual premium, on the payment of which the continuance of the policy and the liability of the company depended. The court, against the objection of the appellant, admitted the evidence. As we have already declared, if the plaintiffs had followed strictly the analogous form of complaint prescribed by the Code, it would have been sufficient for them to state that their claim was founded on a policy of insurance of a certain date, issued on the life of John Wilson Bledsoe, by which the defendant promised to pay to them a certain sum on his death, and that he died prior to the institution of suit, of which the defendant had notice. All other allegations are rendered unnecessary. If the liability of the insurer has not attached, whether from a default of the plaintiffs, or from any other cause, it is matter of defence, which may be presented by plea. ' Apart from this view the policy became a binding contract on the payment of the first cash premium, and although it is declared that it is made upon condition that it is to cease and determine in the event of a failure to pay the annual premiums as they become due, a breach of this condition is matter of defence, the burden of proving which rests on the insurer. It was not necessary, therefore, for the plaintiff to have averred a performance of this condition, or an excuse for its non-performance. 1 Bigelow's Life & Accident Ins. Rep. 218. When, therefore, it was urged as matter of defence that the policy was forfeited, or had, in its own words, ceased and determined by the failure to pay, as it was due, the annual premium; matter of excuse for the failure was properly admissible.

It is apparent the policy was obtained by a father on his own life for the benefit of his infant children. The policy was issued and accepted on the expectation that he would pay the premiums. The beneficiaries had a right to adopt the contract, pay the premiums, and keep the policy alive ; yet, it was not the expectation or the intention of the real contracting parties that they would do so. The duty of making the payment devolved on the father. After the annual premium had become due, and default had been made in its payment, the father, in

VOL. LII.

[Brooklyn Life Insurance Company v. Bledsoe.]

the course of settlement of accounts with a former partner, charged himself with moneys collected on partnership debts, and declared he had made the collections to pay the premium, but did not pay because he had been informed by the secretary of the company the policy had been cancelled. To the introduction of these declarations in evidence the appellant objected, but the objection was overruled. The evidence is *hearsay*, in its most objectionable and dangerous form, and consists of exculpatory declarations, made by a party in the absence and without the knowledge of his adversary who is to be affected by them. A party's acts or declarations are never admissible as evidence for him, unless they constitute part of the *res gestæ*. The specific fact it was proposed to prove was, that the declarant was in readiness to pay, but had been prevented from making the payment of the premium by the act of the company. The time of payment had passed nearly a month before these declarations were made. Whatever, if any act was done, preventing the payment, must have been at or before the day of payment. It was therefore antecedent to these declarations. The *res gestæ* includes only facts, circumstances, or declarations attending the main fact, springing out of it, and cotemporaneous with it. It is true they need not be exactly coincident in point of time with the main fact, but they must be so near it as to bear the relation of unpremeditated result to it. These declarations are wanting in this element of nearness, did not spring out of, or have any connection with the main fact, but grew out of a different transaction with a mere stranger, and are merely narrative of the main fact and the circumstances attending it. *Nelson* v. *Iverson*, 17 Ala. 216; *McBride* v. *Thompson*, 8 Ala. 650; *Gandy* v. *Humphries*, 35 Ala. 617. Hearsay is excluded not only because it generally presupposes the existence of better evidence, nor because of its intrinsic weakness and incompetency to satisfy the mind, but because of the frauds which could be practised under its cover. 1 Green. Ev. § 99; *Glover* v. *Millings*, 2 St. & Port. 28. A like reason obtains for the exclusion of a party's own declarations or acts when offered as evidence for him. If a party could by his own acts and declarations, made in the absence of the other party, manufacture evidence to excuse his non-performance, there could not be many contracts capable of enforcement. The widest door to fraud would be opened. Parties would find themselves stripped of their rights by the mere declarations of their adversaries in interest, of which they had not knowledge until offered in evidence against them. There was manifest error in the admission of the evidence of the witness Coleman ; it should have been excluded.

The evidence of the witness Daniel, that Dr. Bledsoe spoke

of the fact that the premium was becoming due, and of the source from which he expected to obtain money to pay it, and of his proposition to loan him the money to make the payment, was also inadmissible. It is subject to the objection that it is nothing more than the declarations of a party offered as evidence in his favor, capable of being manufactured to meet his own delinquencies. The evidence of this witness as to Dr. Bledsoe's ability to make the payment would be admissible in connection with legal evidence of an excuse for the non-payment.

In answer to a letter from the father, asking an extension of the time of payment of the premium, the secretary of the company replied stating that the policy had been cancelled on the books of the company, because no payment had ever been made to the company on it, and requesting him, if the premium had been paid to a deceased agent of the company, to send them a certified copy of the receipt for the payment, and to state when and to whom it was paid, as no premium had been sent them, and they had no record of the payment. These letters having been given in evidence, connected with evidence of the fact that the cash premium had been paid to a deceased agent of the company, the appellant proposed proving that it had never received this premium, was ignorant of its payment, and of the delivery of the policy. The evidence was rejected. The payment to the agent, his authority to receive it not being disputed, was a payment to the company, rendering the policy obligatory as a contract. The cancellation by the company did not affect its validity, or impair the rights of the assured, or of the beneficiaries. They could, by paying or offering to pay the premiums as they became due, have kept it alive, as completely as if the cancellation had not been made. The cancellation was a mere error, which, if not accepted by the assured as a rescission of the contract, could not prejudice either party. The appellant should have been permitted to prove the error in which it originated, and thus have relieved itself from any imputation of an intentional abandonment of the contract, with knowledge that the assured had performed his part, and was relying on it as valid.

The report and decree of insolvency of the estate of the assured, had in the court of probate, was properly excluded. The effect of the report and decree is simply to declare the *status* or condition of the estate, as between the personal representative and the creditors. They alone are parties to it, capable of contesting the facts on which it is founded, having interests affected by it, or in any wise concluded by it as a judicial proceeding. As to all other persons, it is *res inter alios acta*, and not evidence of the insolvency of the decedent,

or of any other fact involved in it. *McGuire* v. *Shelby*, 20 Ala. 456 ; *State Bank* v. *Ellis*, 30 Ala. 478.

When this policy was issued, the statutes of this State required foreign insurance companies, transacting business here, to procure a certificate of authority from the comptroller. This certificate could be issued only on the filing of a certain statement, and paying a certain sum to the Fire Department Association and Medical College of Mobile. Any person violating the statute was declared guilty of a misdemeanor, and subject on conviction to fine and imprisonment. R. C. §§ 1180–91. To show the illegality of the policy, the appellant proposed proving its failure to observe the statute. That the contract of insurance was made here does not seem to have been a disputed fact. The company may have violated the statute, and the agents making the contract may have been liable to the penalty imposed ; but neither the assured nor the beneficiaries were involved in, or affected by their guilt. While it is a settled principle, that a contract founded on an act prohibited by statute is void ; yet it is subject to this qualification, that although the legislature may forbid the doing of a particular act, a party not privy to it, or involved in the guilt of the transaction, may recover of the guilty actor unless the act itself is void. *Whetstone* v. *Br. Bank Montgomery*, 9 Ala. 875.

The statute did not declare void the policy or contract of insurance made here, by a foreign company, without a certificate of authority. Its purpose was not to absolve the company from liability on its contracts made here. The object was to afford our own citizens ample security against loss, because of transactions had here with the companies. The company and its agents are alone guilty under the statute, if they violate it. Such violation they cannot invoke as a protection from liability on their contracts. There was no error in excluding the evidence offered to show its want of statutory authority to transact business.

The policy, by its terms, is forfeitable, is to cease and determine and the insurer to be freed from all liability, if the annual premiums were not paid when they became due and payable. The continuance of the policy as a contract—its life—depended on the prompt payment of the premiums. The payment was manifestly the condition precedent, on which the parties respectively stipulated for its continuance, and on the non-performance of which they assented to its extinction. *Howell* v. *Knickerbocker Life Ins. Co.* 2 Big. Life & Acc. Ins. Rep. 132 ; *Robert* v. *N. E. Mut. Life Ins. Co.* Ib. 141. It is an elementary principle, that the performance of conditions precedent may be waived, or, if the party, whose responsibility is to

arise on their performance, by any act of his prevents performance, the opposite party is excused from a strict compliance. He must, however, prevent performance — he must be the proximate, not the remote cause — the *causa causans*, not the *causa sine qua non*. 2 Chit. on Con. 1087. The charge given on the request of the appellee, and the first and second charges requested by the appellant, which were refused, present the same question. The charge given and the charges requested are the converse of each other. That question is, whether the cancellation of the policy by appellant on its books, in ignorance of the fact that the cash premium had been paid, on the payment of which the policy became operative, and the letter of appellant's secretary informing the assured of it, written in response to the application of the assured for an indulgence, or extension of the time for payment of the premium, can be regarded as preventing the assured from making payment, or as excusing him from the duty of paying on the day fixed, if he would continue the policy.

The plaintiffs' action proceeds on the hypothesis that the policy was a binding contract, conferring on them rights, and fixing on the defendant liabilities, which they claim to enforce. If the policy was such a contract, it needs no argument to support the proposition, that it was not in the power of the company to rescind this contract, or by its own act or omission to absolve itself from the liabilities it imposes. The cancellation of the policy on its books was nugatory — impairing no right of the assured, and diminishing no liability it had assumed. As it required the assent of the assured to make the contract, so his assent was necessary to its rescission or renunciation. May on Ins. 567. The policy — which is now the foundation of the action, which is the highest and best evidence of the rights of the assured, and of the liabilities of the insurer — remained unaltered, without a blur or mark on it, exciting suspicion, or requiring explanation, in the possession of the assured, unaffected by this cancellation. The existence of the policy on the books of the company was merely evidence to it of the number and extent of its risks. It was no more than the entry on a merchant's books of his bills payable, or other debts. The cancellation or erasure of such an entry could work no injury to those having debts against him. How then could the cancellation, which was impotent to harm the assured, and impotent of benefit to the insurer, have prevented the assured from performing the condition on which the continuance of the contract depended? If the assured desired to keep the policy alive, it should have quickened his diligence in the performance of the condition. It may have indicated a purpose on the part of the insurer to renounce the contract,

[Brooklyn Life Insurance Company *v.* Bledsoe.]

but such renunciation was not within its power, without the assent of the assured. It could not impede or hinder the assured from making the payment or offer to make it, at the appointed time, and thus keep the policy alive. If he had made the offer, the cancellation would not have justified its rejection. The policy would have continued a contract as binding on the insurer as if the cancellation on the books of the company had not been made. It is not material he was not informed of the cancellation until a few days before the premium was payable. The fact itself is immaterial, and of consequence, the time the assured acquired knowledge of it cannot be important.

There is nothing in the letter of the secretary indicating that the company would not receive the annual premium, if it was tendered when it became payable. It states the cancellation of the policy was made because no payment had been made upon it to the company, and requests, if the payment was made to a deceased agent of the company, that a certified copy of the receipt be sent them, with a statement of the time, manner, and person to whom it was made. The evidence thus requested was necessary to enable it to recover from the agent or his representatives, if payment had been made to him; and it was proper it should be furnished the company, to satisfy it of the fairness of the contract the company supposed had never been completed. The request indicates rather a purpose to continue the contract, if it was fair, and it was complied with by the assured, than a purpose unlawfully and without cause to renounce it.

Whenever a party has been excused from the performance of a condition precedent, because of the act of the party to whom performance is due, the act relied on has invariably been of a character that rendered performance impossible; or induced the belief that it was waived; or that if it was offered it would not be accepted. An act not of this character cannot be regarded as preventing performance, as the proximate cause of non-performance. From the evidence no such act is imputable to the appellant, and the non-payment of the premium is without excuse. It is a breach of a condition on which the continuance of the policy depended. The court erred in the charge given on request of the appellees, and in the refusal of the first and second charges requested by the appellant. It is not necessary to notice the remaining assignment of errors, as what we have said will probably enable the court on another trial to dispose of the case correctly.

The judgment is reversed and the cause remanded.